Estate of Gutenkunst: Kohls, Receiver, Appellant, vs. Prasser and another, Trustees, Respondents.

*June 5—June 21, 1939.*

For the appellant there were briefs by *Bitker & Puchner* of Milwaukee, attorneys, and *William H. Page* of Madison of counsel, and oral argument by *Irving A. Puchner.*

For the respondents there was a brief by *Friedrich & Hackbarth,* attorneys for the trustees, *Hammersley & Torke,* attorneys for the Lillian A. Winkler estate, and *Eugene Wengert,* guardian *ad litem,* all of Milwaukee, and oral argument by *Mr. Otto G. Hackbarth, Mr. Wengert,* and *Mr. Norton A. Torke.*

WICKHEM, J.   On March 23, 1932, Edwin W. Gutenkunst executed a promissory note to George F. Rowe, in the sum of $1,500 due October 15, 1933.   On May 13, 1936, Rowe obtained a judgment against Gunṭenkunst for the amount of principal and interest of this note.   In a supplementary proceeding thereafter Waller Carson was appointed receiver and was succeeded by E. Eugene Kohls.   Gutenkunst was one of the executors and trustees of the estate of his father and was heir to a one-eighth interest in the residue of the estate.   The estate was appraised at $791,857.42. Gutenkunst was also a stockholder and president-treasurer

of the Oakton Country Club, a corporation engaged in running a hotel and golf course. Between the dates of October 15, 1931, and July 1, 1932, Gutenkunst, as executor, invested between sixty and sixty-four thousand dollars of the funds of the estate in bonds of this corporation. In 1933 these bonds became worthless because of an adjudication that a large number of mechanics' liens absorbing the value of the property had priority over the bond issue. On May 20, 1932, all of the heirs except Gutenkunst and one other obtained an order from the county court directing the executors to produce an itemized list of all loans made by the executors to themselves or to any copartnership or corporation in which they were interested. On March 22, 1932, the petition and final account of the executor was filed showing $15,000 of Oakton Country Club bonds on hand. On July 7, 1932, an order was obtained to show cause why the executors should not be removed, it being alleged that the executors purchased and dealt in stocks of doubtful value, resulting in squandering and depleting the assets of the estate. By stipulation between the parties these orders were dismissed and consent to allowance of the account given because the parties had "adjusted, compromised, and settled" their differences. Thereafter, the executors filed a supplemental account on July 27, 1932, the final showing being that $48,000 of Oakton Country Club bonds were in the hands of the executors at this time. Gutenkunst and two others were appointed trustees on July 29, 1932, and the trustees took over the property and executed a receipt therefor. On December 13, 1933, Gutenkunst resigned as trustee and was discharged December 29th of the same year. Meantime, as heretofore indicated, the bonds had become worthless by reason of the fact that they were held junior to large numbers of mechanics' liens against the Oakton property. Under date of July 1, 1932, shortly after the value of the Oakton bonds and the propriety of investing funds of the estate in them had been seriously questioned by the heirs, the agreement

which gives rise to this controversy was executed under seal by E. W. Gutenkunst. The agreement recites a consideration of $1 and other good and valuable consideration. Gutenkunst agrees "for the purpose of guaranteeing to all of the heirs of the estate of William Gutenkunst, deceased, full payment of their share and interest in and to said estate and to the end that they shall not, or shall either of them, suffer any loss or damage in any amount whatsoever by reason of the estate of said William Gutenkunst, having purchased and now in its possession any bond or bonds issued by the Oakton Country Club Company," that in the event any portion of the estate is in bonds of the Oakton company at the time of final distribution, he will purchase these bonds at par with accumulated interest, and that his share in the estate may stand as a security for this agreement. Subsequently, Gutenkunst accepted payment of his share of the estate in Oakton Country Club bonds, the last payment so made being in 1935. This matter comes up upon objections by the receiver under supplementary proceedings to the allowance of account of remaining trustees Florence Prasser and F. C. Seideman.

The objections urged below which constitute appellant's contentions here may thus be summarized: (1) That the agreement of July 1st was without consideration and is unenforceable as to the undistributed portion of the estate because as to that it is executory; (2) that the agreement is in fraud of creditors; and (3) that the agreement is void as an attempt to change the distribution of the estate provided for in the will. The contention that the assignment was without consideration is based upon, (1) the recitation of purpose above quoted, which is claimed to rebut any presumption of consideration and demonstrates that there was none; (2) the claim that the order to show cause dated July 7, 1932, which postdates the agreement and which sought to remove the executors, indicates that the agreement was not made to compromise differences between Gutenkunst and the heirs; and (3) the assertion that there was no liability on his

part arising out of the investments in Oakton bonds since the bonds were first-mortgage bonds and only lost priority because of a delay in recording, culpability in respect to which was not fixed upon Gutenkunst. The contentions cannot be sustained. The recitation purports to state the purpose and not the consideration for the agreement. The latter is stated in the opening paragraph of the agreement as, "One ($1) dollar and other good and valuable consideration to me in hand paid, the receipt whereof is hereby confessed and acknowledged." What makes up this consideration is not further disclosed by the agreement.

Respondents contend that the record indicates that Gutenkunst executed the agreement as part of a compromise of claims of the other heirs based upon his investment in the worthless bonds of the Oakton Country Club. Appellant's reply is that evidently it settled nothing because after its date an effort to remove him was made, and that at all events there was never any valid claim against him arising out of the investment. While appellant's argument is ingenious and ably put, we think it must be rejected. The agreement was under seal, and under sec. 328.27, Stats., was presumptively supported by a sufficient consideration. In connection with this see *Singer v. General Acc., F. & L. Assur. Corp.* 219 Wis. 508, 262 N. W. 702. We conclude that the evidence adduced does not rebut this presumption. It merely suggests the possibility that the consideration was insufficient. It appears from the evidence that Gutenkunst was an officer of the Oakton Country Club at the time when as executor he made or participated in the investment of estate funds in the bonds in question. This presumably resulted in a liability on his part and rendered the transaction voidable at the option of the other heirs. See *Matter of Filardo,* 221 Wis. 589, 267 N. W. 312; *Hutson v. Jenson,* 110 Wis. 26, 85 N. W. 689; *Shaw v. Crandon State Bank,* 145 Wis. 639, 129 N. W. 794. Aside from this fact, there is no evidence that the bonds constituted a lawful investment under sec. 231.32,

Stats. 1931, now sec. 320.01, which provides in part that investments may be made "in obligations secured . . . by first real-estate mortgages . . . on improved farm property or improved urban property . . . in this state . . . the amount of which mortgages . . . does not exceed one half of the actual value of the property covered thereby." There is no evidence that the value of the property was such as to warrant the investment, and this being true, we do not deem it necessary to consider whether the bonds were in fact first mortgages.

In addition to this, it appears that Gutenkunst indorsed upon these bonds his personal guarantee. The bonds are not in evidence, and the form of guarantee is not before us, so that we cannot say that this was not a legally binding contract on the part of Gutenkunst. With this background of facts it can hardly be said appellant has shown that there was no liability to discharge or dispute to compromise. That the heirs contended for such a liability is evident from the contents of the orders to show cause. The agreement which is here attacked was executed shortly after the propriety of the investment was questioned, and this was followed within less than a month by the discharge of Gutenkunst as executor upon a representation to the court that the parties had compromised their differences. While the order to show cause of July 7th follows rather than precedes the agreement, there is no evidence that excludes the possibility that the agreement of July 1st was made effective by delivery subsequent to that date. We think that the reasonable inference is that the agreement was in consideration of a promise by the heirs not to press the liability of Gutenkunst as executor or guarantor. Even if it were to be held that the evidence is not sufficient affirmatively to support such an inference, it would be far from supporting the inference contended for by appellant, namely, that such was not the consideration for the agreement. It was for appellant to rebut the presumption of consideration in this case, and it is plain to us that he failed

to bring the issue out of the field of speculation and conjecture. This being true, the presumption stands and the trial court correctly concluded that the agreement was not unenforceable as to its executory features for want of consideration.

It is next contended that the agreement was in fraud of creditors. Reliance is had upon sec. 242.04, Stats., which declares fraudulent as to creditors every obligation incurred by a person who is or will be thereby rendered insolvent without respect to the actual intent of the debtor, and upon sec. 242.07, Stats., which condemns as fraudulent every obligation incurred with actual intent to hinder, delay, or defraud present or future creditors. With respect to sec. 242.04, Stats., the cornerstone of the contention is that the effect of the agreement was to render Gutenkunst insolvent. We have carefully examined the evidence and conclude that it does not sustain the conclusion that this was the effect of the agreement. Having already determined that there is no proof that the agreement was without consideration, it is evident that appellant's claim under sec. 242.04, Stats., must fail.

Appellant's theory under sec. 242.07, Stats., is that respondents concealed the existence of the agreement in question; that they consented to Gutenkunst's discharge as executor and trustee when they believed him guilty of misconduct, and also consented to the allowance of his accounts when they believed them to be incorrect; and that this evinced an intent on their part to hinder, delay, and defraud creditors. We think this claim cannot be sustained. The proof is insufficient to indicate that this is not at most a mere matter of preferring the heirs to his other creditors. There is no evidence that other creditors were deceived or that any of the dealings between the heirs and Gutenkunst were calculated to have this effect or intended to defraud creditors.

The final contention is that the agreement of July 1st modified the provisions of the will relating to distribution. *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778;

*Will of Reynolds,* 151 Wis. 375, 138 N. W. 1019; *Graef v. Kanouse,* 205 Wis. 597, 238 N. W. 377, and other cases are cited to the well-established proposition that a contract between the heirs and the next of kin to the effect that an estate shall be distributed upon a different basis than that provided by the will of the testator is against public policy and void. The difficulty with the contention is that the agreement was in terms nothing more than a promise to purchase bonds from the estate at par and put in their place cash to be distributed to all of the heirs including the executor. Furthermore, the agreement took effect after the court had finally distributed the estate to the trustees in accordance with the will. After the worthlessness of the bonds was demonstrated, which was not until sometime after the agreement in question, the parties adopted the short cut of having Gutenkunst accept the bonds themselves in discharge of his share of the estate. We see nothing in this involving a contract to make a distribution other than that prescribed by the will.

*By the Court.*—Judgment affirmed.