# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2364-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>　　　　Plaintiff-Respondent-Petitioner,<br>　　v.<br>David Gutierrez,<br>　　　　Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 312,933 N.W.2d 133
PDC No:2019 WI App 41 - Published

| | |
|---|---|
| OPINION FILED: | June 3, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 10, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Green Lake |
| JUDGE: | Andrew E. Voigt |

JUSTICES:

DALLET, J., delivered the majority opinion for a unanimous Court.
NOT PARTICIPATING:
HAGEDORN, J., did not participate. ANN WALSH BRADLEY, J., withdrew
from participation.

ATTORNEYS:

　　For the plaintiff-respondent-petitioner, there were briefs
filed by *Daniel J. O'Brien* assistant attorney general, with whom
on the briefs was *Joshua L. Kaul,* attorney general. There was an
oral argument by *Daniel J. O'Brien*.

　　For the defendant-appellant, there was a brief filed by *Chris
A. Gramstrup* and *Gramstrup Law Office*, Superior. There was an oral
argument by *Chris A. Gramstrup*.

**2020 WI 52**

No. 2017AP2364-CR
(L.C. No. 2012CF115)

STATE OF WISCONSIN : IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

State of Wisconsin,

    Plaintiff-Respondent-Petitioner,

    v.

David Gutierrez,

    Defendant-Appellant.

**FILED**

**JUN 3, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion for a unanimous Court.

HAGEDORN, J., did not participate. ANN WALSH BRADLEY, J., withdrew from participation.

---

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part.*

¶1 REBECCA FRANK DALLET, J. This is a review of a published decision of the court of appeals[1] reversing the judgment of conviction entered against David Gutierrez.

¶2 Gutierrez was convicted of multiple counts of sexual assault and enticement of his stepdaughter. In a postconviction

---

[1] State v. Gutierrez, 2019 WI App 41, 388 Wis. 2d 312, 933 N.W.2d 133.

motion, Gutierrez alleged the denial of his constitutional right to an impartial jury and to effective assistance of counsel. Gutierrez appealed the denial of his postconviction motion. He also appealed his judgment of conviction on the grounds that the circuit court[2] erred in its decision to exclude unidentified DNA evidence and to admit "other acts" evidence. The court of appeals reversed the circuit court's decision to exclude the unidentified DNA evidence and affirmed its decision to admit other acts evidence. The judgment of conviction was vacated and the case was remanded for a new trial. The State petitioned for review.

¶3 We conclude that the court of appeals erroneously reversed the circuit court's exercise of discretion in excluding unidentified DNA evidence. We further conclude that the court of appeals properly affirmed the circuit court's admission of other acts evidence. Lastly, we conclude that Gutierrez was not denied his right to an impartial jury or his right to effective assistance of counsel. Accordingly, we reverse the court of appeals' decision as to the unidentified DNA evidence and affirm its decision as to the other acts evidence. We also affirm the circuit court's denial of Gutierrez's postconviction motion.

## I. BACKGROUND

¶4 On November 2, 2012, twelve-year-old A.R. told her cousin she was afraid to return home because her stepfather, Gutierrez, touched her the night before. In a forensic interview conducted later that day, A.R. alleged that the prior evening,

---

[2] The Honorable W. Andrew Voigt of the Green Lake County Circuit Court presided.

2

November 1, Gutierrez removed her clothes, touched her genitals, made her touch his genitals, performed oral sex on her, forced her to perform oral sex on him, ejaculated in her mouth, and attempted to penetrate her with his penis. A.R. further alleged that Gutierrez first sexually assaulted her when she was six years old by luring her into a closet and performing oral sex on her. A.R. also provided specific details about an alleged sexual assault that took place in a van some time between May and October 2011 and in a garage some time between September 2011 and May 2012.

¶5 After her forensic interview, A.R. submitted to a sexual assault forensic exam where she indicated that in the 24 hours since the assault she had urinated, defecated, washed her genital area, taken a shower, drank liquid, brushed her teeth, swished out her mouth, and changed her clothes. The nurse collected a perioral swab from A.R. to test for DNA.[3]

¶6 Additional DNA swabs were taken from two pairs of A.R.'s underwear seized during the execution of a search warrant on November 3. One pair, which A.R. indicated she wore during the November 1 assault, was pulled mid-cycle from the washing machine. It did not match the description A.R. had initially given to the police. The second pair, which was purportedly the underwear A.R. wore on November 2, was retrieved from a pile of soiled laundry. DNA from at least three unidentified males was detected on the perioral swab, and DNA from at least five unidentified males was

---

[3] "Perioral" refers to the exterior area around a person's mouth. See Perioral, Attorney's Dictionary of Medicine (Oct. 2019).

detected on the underwear swabs. The testing excluded Gutierrez as a contributor to either DNA mixture. The testing also determined that none of the DNA was from semen or saliva.

¶7 Based on the three allegations of sexual assault that took place between 2011 and 2012, Gutierrez was charged with three counts of sexual assault of a child under the age of thirteen, three counts of incest with a child by stepparent, three counts of child enticement, and one count of exposing a child to harmful material.[4] Prior to trial, Gutierrez moved to admit the DNA test results. The State objected, arguing that the DNA evidence was not relevant and that any probative value was substantially outweighed by the danger of undue prejudice, confusion of the issues, and misleading the jury. See Wis. Stat. §§ 904.01, 904.03. Additionally, the State asserted that the indication of unidentified male DNA on the swabs would invite speculation as to why male DNA would be around A.R.'s mouth and on her underwear, a purpose barred by Wisconsin's rape shield law, Wis. Stat. § 972.11(2)(b). Defense counsel argued that the unidentified DNA evidence was highly probative to rebut the State's theory that Gutierrez's DNA would not likely be found on A.R. since she had washed and wiped herself in the time between the assault and when the swabs were collected, and that this purpose was not contrary to the rape shield law.

---

[4] See Wis. Stat. §§ 948.02(1)(e), 948.06(1m), 948.07(1), & 948.11(2)(a) (2017-18). All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

4

¶8    The circuit court ruled that Gutierrez could introduce evidence only that DNA testing was performed on the perioral and underwear swabs and that his DNA was not found on those swabs. While the circuit court "agree[d] with [defense counsel's] analysis of the rape shield law," it precluded Gutierrez from presenting the unidentified DNA evidence because the lack of information surrounding the sources of the DNA and when it had been deposited rendered its probative value "extraordinarily limited." The circuit court also raised concerns that expert testimony on this issue could consume half a day and could take the trial "down a rabbit hole." As an alternative, the court allowed defense counsel to generally explore how DNA is transferred, how long foreign DNA remains viable on another person, and how easily DNA can be washed or wiped off with the expert witness.

¶9    The State moved to admit as "other acts" evidence allegations of prior sexual assaults dating back to when A.R. was approximately six years old. In light of the greater latitude rule applicable in child sexual assault cases,[5] the circuit court granted the State's motion in part, admitting only the first incident of alleged assault for the limited purposes of proving

---

[5] The circuit court initially denied the State's motion to admit the other acts evidence but reversed that decision upon the State's motion to reconsider. Specifically, the circuit court cited the greater latitude rule which permits a greater latitude of proof as to other acts "in sexual assault cases, particularly cases that involve sexual assault of a child . . . ." State v. Davidson, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606.

motive and providing context and background. The court agreed to instruct the jury that if it believed A.R., it could consider Gutierrez's other act of child sexual assault for only these limited purposes.[6]

¶10 With Gutierrez's trial only weeks away, defense counsel disclosed a recent claim by Gutierrez's mother that while staying with her in Texas, A.R. confessed that she fabricated the allegations because she was upset with Gutierrez. While Gutierrez's mother appeared on his amended witness list, defense counsel announced at the outset of Gutierrez's case-in-chief that

---

[6] The circuit court modeled its cautionary instruction after Wis JI——Criminal 275 (2015). Specifically, the court instructed the jury:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant had sexual contact with [A.R.] in a closet when she was about six years old and living in the State of Texas and that the defendant told [A.R.] not to tell anyone because it was a secret. If you find that this conduct did occur, you should consider it only on the issues of motive, context or background.

> You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

> . . .

> You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged.

6

he would not be calling her to testify. Defense counsel opted instead to confront A.R. with the claim on cross-examination.

¶11 During jury selection, defense counsel asked whether any prospective juror felt they could not be fair and impartial given the nature of the charges. Juror R.G. responded, "I don't know if I could be impartial. I work with kids. I drive school bus, so I deal with kids all the time, and I just, I don't know if I can be impartial." Defense counsel moved the court to excuse Juror R.G. for cause, but the State objected arguing that there needed to be a "little more certainty." The circuit court never ruled on the motion. Defense counsel did not renew the motion, question Juror R.G. further, or exercise a peremptory strike on her. She subsequently served on Gutierrez's jury.

¶12 One of the witnesses called by the defense at trial was State Crime Laboratory DNA Analyst Samantha Delfosse, who testified that Gutierrez's DNA was not present on A.R.'s perioral or underwear swabs. On cross-examination, the State elicited her testimony that DNA can be washed, scrubbed, or wiped off, and the more a person is washing or wiping, "the more likely you are removing any kind of DNA that was deposited." Defense counsel did not conduct any redirect examination.

¶13 The jury ultimately found Gutierrez guilty on nine counts.[7]

---

[7] The jury found Gutierrez not guilty of exposing a child to harmful material. See Wis. Stat. § 948.11(2)(a).

7

¶14 Gutierrez filed a postconviction motion, arguing that he was denied his right to an impartial jury. He also asserted that his defense counsel was unconstitutionally ineffective because he did not further question or exercise a peremptory strike on Juror R.G., or call his mother as a witness.[8] At the Machner[9] hearing, defense counsel testified that he did not remember Juror R.G., her statement, or why he exercised each of Gutierrez's peremptory strikes on other prospective jurors. He admitted that "the best I can say is I must have felt there were other people that I needed off the jury more than her." As for not calling Gutierrez's mother as a witness, defense counsel stated that he did not make that decision until the defense's case-in-chief. In making that decision, he considered that Gutierrez's mother could not recall specifics surrounding the recantation such as why A.R. was at her home in Texas, when the recantation was made, or why she did not immediately report it. Defense counsel described Gutierrez's mother as a "loose cannon" who "loved to talk" and determined that these characteristics would allow her credibility to be undermined on cross-examination. Finally, he expressed concern that by calling the defendant's mother as a witness, the jury might infer that the defense was desperate.

¶15 The circuit court denied Gutierrez's postconviction motion and affirmed the judgment of conviction. Gutierrez appealed

---

[8] Gutierrez also claimed his counsel was unconstitutionally ineffective for not properly subpoenaing his wife to testify at trial, but this claim was not pursued on appeal.

[9] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

the denial of his postconviction motion and, by direct appeal, also challenged the circuit court's decision to exclude the unidentified DNA evidence and to allow the other acts evidence.

¶16 The court of appeals reversed the circuit court's judgment of conviction and remanded the case for a new trial. The court of appeals held that the circuit court erroneously exercised its discretion in excluding the unidentified DNA evidence and that the error was not harmless.[10] State v. Gutierrez, 2019 WI App 41, ¶¶9-12, 388 Wis. 2d 312, 933 N.W.2d 133. It reasoned that the exclusion of this evidence "incorrectly led [the jury] to believe that the underwear and mouth swabs contained no DNA evidence," thereby bolstering the State's theory that A.R. washed or wiped Gutierrez's DNA off and preventing Gutierrez from rebutting that theory.[11] Id., ¶9. For purposes of remand, the court of appeals also decided that the circuit court did not erroneously admit the other acts evidence in light of the greater latitude rule. Id.,

---

[10] The dissent concluded that the majority misapplied the standard of review because the circuit court properly exercised its discretion to exclude the unidentified DNA evidence. Gutierrez, 388 Wis. 2d 312, ¶¶16-38.

[11] The court of appeals, in a footnote, formulated a constitutional argument for Gutierrez based on the Confrontation Clause and Compulsory Process Clause found in the United States Constitution and Wisconsin Constitution. Gutierrez, 388 Wis. 2d 312, ¶8 n.4 (citing U.S. Const. amend. VI; Wis. Const. art. I, § 7). As the court of appeals notes, however, this argument is gleaned from a single reference in Gutierrez's reply brief to the fundamental right of a criminal defendant to present a defense. This amounts to a forfeiture of the issue and we do not address it further. See A.O. Smith Corp. v. Allstate Ins. Companies, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[A] party has to adequately, and with some prominence, argue an issue in order for this court to decide it.").

¶¶13-15. The court of appeals did not reach the juror bias or ineffective assistance claims raised in Gutierrez's postconviction motion since it remanded the case for a new trial. Id., ¶12 n.8. The State petitioned for review, which we granted.

## II. STANDARD OF REVIEW

¶17 A decision to admit or exclude evidence is within the circuit court's discretion. State v. Warbelton, 2009 WI 6, ¶17, 315 Wis. 2d 253, 759 N.W.2d 557. This court will reverse that decision only if the circuit court erroneously exercised its discretion. Id.

¶18 When reviewing a claim of juror bias, we "uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." State v. Lepsch, 2017 WI 27, ¶23, 374 Wis. 2d 98, 892 N.W.2d 682.

¶19 Finally, whether a defendant received ineffective assistance of counsel is a mixed question of fact and law. State v. Wayerski, 2019 WI 11, ¶32, 385 Wis. 2d 344, 922 N.W.2d 468. The circuit court's factual findings, including the circumstances of the case and trial counsel's conduct and strategy, will be upheld unless they are clearly erroneous. Id. Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law we review de novo. Id.

## III. ANALYSIS

¶20 We first address whether the circuit court properly exercised its discretion in excluding unidentified DNA evidence and admitting other acts evidence of a prior child sexual assault. Next we consider Gutierrez's postconviction claims that he was

10

denied the right to an impartial jury and effective assistance of counsel.

## A. Unidentified DNA Evidence

¶21 The State argues that the court of appeals erred in second-guessing the circuit court's discretionary decision to exclude the unidentified DNA evidence found on A.R.'s perioral and underwear swabs. An appellate court upholds a circuit court's exercise of discretion to admit or exclude evidence where it "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." State v. Chamblis, 2015 WI 53, ¶20, 362 Wis. 2d 370, 864 N.W.2d 806.

¶22 Here, the proper legal standard is the balancing test set forth in Wis. Stat. § 904.03: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Applying this proper legal standard to all of the relevant facts using a demonstrated rational process, it was reasonable for the circuit court to conclude that the probative value of the unidentified DNA was "extraordinarily limited."

¶23 First and foremost, Gutierrez was not the source of the DNA and no known male was identified as a contributor. The DNA was not semen or saliva as might be expected where the allegations include oral sex, attempted vaginal penetration, and ejaculation. As recognized by the circuit court, the DNA could have come from

11

a skin cell, hair follicle, or some other source deposited during an innocuous interaction.

¶24 Moreover, there was no evidence of when the DNA had been deposited. The perioral and underwear samples were not collected until roughly 24 and 48 hours after the alleged assault, respectively. Neither party could say whether the DNA found on those samples was deposited before the time of the alleged assault, or during the extended interim period afterwards. As the State emphasized, the time gap also presented the potential for contamination of the underwear, as one pair was pulled still wet from a running washing machine and the other was taken from a pile of soiled laundry. The circuit court could reasonably conclude that without knowing the critical timeframe for when the unidentified DNA evidence was deposited, the evidence had limited probative value in rebutting the State's theory that A.R. washed or wiped off Gutierrez's DNA.

¶25 Finally, A.R.'s initial description of the underwear worn during the alleged assault was inconsistent with the underwear tested. The questions regarding the timeframe, source of and contributors to the DNA, and the high potential for contamination of the underwear all gave the circuit court reasonable grounds to conclude that the DNA had low probative value.

¶26 The circuit court could also reasonably conclude that the limited probative value of the unidentified DNA evidence was substantially outweighed by the dangers of confusion of the issues, misleading the jury, and waste of time pursuant to Wis. Stat. § 904.03. Specifically, the circuit court raised concern that the

12

questions surrounding the unidentified male DNA would lead the trial down "a rabbit hole" calling for speculative testimony. A jury could be confused or misled by the collateral issue of why male DNA was present and therefore distracted from the pertinent issue of whether Gutierrez's DNA had been present but was washed or wiped off. The circuit court also expressed apprehension that the expert testimony on this collateral issue would consume a significant portion of the trial. The circuit court provided for an alternative way to elicit the relevant information: defense counsel could question the expert witness generally on how DNA is transferred, how long foreign DNA remains viable on another person, and how easily DNA can be washed or wiped off.

¶27 The court of appeals disagreed with the low probative value the circuit court assigned to the unidentified DNA evidence. The court of appeals also dismissed the factors considered by the circuit court pursuant to Wis. Stat. § 904.03: the dangers of confusion of the issues, misleading the jury, and wasting time. Gutierrez, 388 Wis. 2d 312, ¶¶6, 9-10. While the court of appeals may have preferred that the circuit court give more weight to the evidence's probative value, it "may not substitute its discretion for that of the circuit court." State v. Rhodes, 2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850. Instead, appellate courts should "look for reasons to sustain a trial court's discretionary decision." State v. Wiskerchen, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730 (quoted source omitted). Our review of the record shows the circuit court applied the proper legal standard to the relevant facts and reached a reasonable discretionary decision.

13

The court of appeals thus erred in reversing the circuit court's decision to exclude the unidentified DNA evidence.

## B. Other Acts Evidence of Child Sexual Assault

¶28 Gutierrez argues that the circuit court erroneously exercised its discretion in admitting evidence that he sexually assaulted A.R. when she was approximately six years old. We agree with the court of appeals that the circuit court properly admitted this other acts evidence of child sexual assault in light of the greater latitude rule.

¶29 Evidence of other crimes, wrongs, or acts may be admitted if: (1) offered for an acceptable purpose under Wis. Stat. § 904.04(2); (2) relevant under Wis. Stat. § 904.01; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or delay under Wis. Stat. § 904.03. See State v. Sullivan, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Alongside this general framework, courts accept a "greater latitude of proof as to other like occurrences" of sexual assault, particularly against children. State v. Davidson, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606; see also § 904.04(2)(b)1. (codifying the common law greater latitude rule). The greater latitude rule liberalizes each of Sullivan's three prongs in favor of admitting similar acts of child sexual assault. See Davidson, 236 Wis. 2d 537, ¶51. The greater latitude rule, however, does not relieve a court of the duty to ensure that the other acts evidence is offered for a proper purpose, is relevant, and its probative value is not substantially outweighed by undue prejudice. Id., ¶52.

14

1. Acceptable purposes

¶30 Under Wis. Stat. § 904.04(2)(a), evidence of other "crimes, wrongs, or acts" is inadmissible unless offered for an acceptable purpose such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Here, the circuit court instructed the jury to consider the other acts evidence only for the purposes of motive, context, and background.

¶31 The other acts evidence of sexual assault was offered for the admissible purpose of proving that Gutierrez's motive was to intentionally touch A.R. for the purpose of sexual arousal or gratification. See Wis. Stat. § 948.01(5)(a) (defining the element of "sexual contact"). "When a defendant's motive for an alleged sexual assault is an element of the charged crime, we have held that other crimes evidence may be offered for the purpose of establishing . . . motive." State v. Hurley, 2015 WI 35, ¶72, 361 Wis. 2d 529, 861 N.W.2d 174 (alteration in original) (emphasis omitted) (quoting State v. Hunt, 2003 WI 81, ¶60, 263 Wis. 2d 1, 666 N.W.2d 771); see also Davidson, 236 Wis. 2d 537, ¶¶57-59. The evidence further provided context for A.R.'s delayed disclosure and a more complete story for the jury. Context and background, while not expressly listed in Wis. Stat. § 904.04(2)(a), can also be acceptable purposes. See State v. Marinez, 2011 WI 12, ¶27, 331 Wis. 2d 568, 797 N.W.2d 399 ("We have previously recognized that context, . . . and providing a more complete background are permissible purposes under Wis. Stat. § 904.04(2)(a).") (citing Hunt, 263 Wis. 2d 1, ¶58). The circuit court did not erroneously

15

exercise its discretion by concluding motive, context, and background were acceptable purposes for the admission of other acts evidence.

## 2. Relevance

¶32 Other acts evidence is relevant under Wis. Stat. § 904.01 if it: (1) "relates to a fact or proposition that is of consequence to the determination of the action"; and (2) is probative because it "has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." Sullivan, 216 Wis. 2d at 785-86. We consider relevancy in the context of the greater latitude rule. See Davidson, 236 Wis. 2d 537, ¶51.

¶33 Several of the counts——sexual assault of a child under the age of thirteen, incest with a child by stepparent, and child enticement——required the State to prove "sexual contact," defined under Wis. Stat. § 948.01(5)(a) as intentional touching for the purpose of sexual arousal or gratification. See Wis. Stat. §§ 948.02(1)(e), 948.06(1m), 948.07(1). This motive, as an element of the charges, is a fact of consequence. See Hurley, 361 Wis. 2d 529, ¶83 (citing Davidson, 236 Wis. 2d 537, ¶65). The other acts evidence was also relevant to A.R.'s credibility, a consequential fact in this case. Id., ¶81 ("A witness's credibility is always 'consequential' within the meaning of Wis. Stat. § 904.01.") (quoting Marinez, 331 Wis. 2d 568, ¶34).

¶34 The probative value of the other acts evidence is measured by the factual similarities it shares with the charged conduct. See Davidson, 236 Wis. 2d 537, ¶67; see also Sullivan,

16

216 Wis. 2d at 787. Here, the charged conduct and the other acts evidence share many factual similarities: the same victim and assailant; similar alleged acts of sexual contact; and the secluded location of all of the assaults. These strong similarities are highly probative as to Gutierrez's motive in the charged assaults and as to A.R.'s credibility.

### 3. Unfair prejudice

¶35 Lastly, Wis. Stat. § 904.03 requires the circuit court to determine whether the probative value of the other acts evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Unfair prejudice occurs when the evidence "influence[s] the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." Davidson, 236 Wis. 2d 537, ¶73 (quoting State v. Gray, 225 Wis. 2d 39, 64, 590 N.W.2d 918 (1999)).

¶36 The other acts evidence was highly probative as to motive, context, and background because of the marked similarities with the charged conduct. See id., ¶¶75-76; supra, ¶34. The danger of unfair prejudice based on the jury hearing evidence of other, similar conduct did not substantially outweigh its high probative value, especially in light of the greater latitude rule. See, e.g, State v. Veach, 2002 WI 110, ¶91, 255 Wis. 2d 390, 648 N.W.2d 447 (holding that even "graphic, disturbing, and extremely

17

prejudicial" testimony detailing a similar other act of child sexual assault is admissible under the greater latitude rule). Additionally, the cautionary instruction mitigated the possibility of unfair prejudice. See Hurley, 361 Wis. 2d 529, ¶89 ("Limiting instructions substantially mitigate any unfair prejudicial effect.").

¶37 Because the other acts evidence of child sexual assault was probative as to motive, context, and background and was not substantially outweighed by unfair prejudice, we affirm the court of appeals in upholding the circuit court's admission of that evidence.

## C. Juror Bias

¶38 Gutierrez argues that by not further questioning or excusing an equivocating juror, the circuit court denied him his constitutional right to an impartial jury. See U.S. Const. amends. VI, XIV; Wis. Const. art. 1, § 7. "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." Lepsch, 374 Wis. 2d 98, ¶21 (citing State v. Faucher, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999)).

¶39 There are three disqualifying forms of juror bias: (1) statutory; (2) subjective; and (3) objective. Faucher, 227 Wis. 2d at 716. Gutierrez's claim falls under subjective bias because it turns on "the words and the demeanor of the prospective juror." Id. at 717. "A prospective juror is subjectively biased if the record reflects that the juror is not a reasonable person who is sincerely willing to set aside any opinion or prior knowledge that the prospective juror might have." State v. Williams, 2015 WI 75,

18

¶79, 364 Wis. 2d 126, 867 N.W.2d 736.   "Prospective jurors are presumed impartial," and it is Gutierrez's burden to rebut this presumption.  Lepsch, 374 Wis. 2d 98, ¶22 (quoting State v. Funk, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421).

¶40  Gutierrez argues that Juror R.G.'s statement "I don't know if I could be impartial" is enough to establish subjective bias and cites as support State v. Carter, 2002 WI App 55, 250 Wis. 2d 851, 641 N.W.2d 517.   In Carter, the court of appeals concluded that a juror was subjectively biased based upon his affirmative response when asked if his brother-in-law's experience as a sexual assault victim would influence his ability to be fair and impartial in a sexual assault trial.  Id., ¶¶3, 12-13.

¶41 Contrary to Gutierrez's contention, Juror R.G.'s uncertainty is distinguishable from the juror's definitive "yes" in Carter.  We accept and tolerate that a prospective juror may honestly equivocate in response to voir dire questions exploring their fears, biases, and predilections.  See State v. Erickson, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999) ("[W]e expect a circuit court to use voir dire to explore a prospective juror's fears, biases, and predilections and fully expect a juror's honest answers at times to be less than unequivocal.").  A circuit court "is in a far superior position to ascertain bias than is an appellate court whose only link to the voir dire is through the 'bare words on a transcript,'" and may properly determine a prospective juror can be impartial despite a less than unequivocal affirmation of impartiality.  Id. at 775-77 (quoting State v. Ferron, 219 Wis. 2d 481, 508, 579 N.W.2d 654 (1998) (Geske, J., dissenting)).

19

¶42 Here, the circuit court made no express finding and the record is devoid of any questions that could clarify whether Juror R.G. actually harbored any bias or, if she did, whether she was credibly willing to set it aside.[12] See Williams, 364 Wis. 2d 126, ¶79. Gutierrez asks us to speculate as to how Juror R.G. would answer unasked questions. Such speculation is insufficient to overcome Juror R.G.'s presumed impartiality. See In re Gutenkunst's Estate, 232 Wis. 81, 86-87, 286 N.W. 566 (1939) ("It was for appellant to rebut the presumption . . . in this case, and it is plain to us that he failed to bring the issue out of the field of speculation and conjecture. This being true, the presumption stands . . . ."). Considering the sparse record in this case and in light of the presumption of juror impartiality, the circuit court did not err by seating Juror R.G. as a juror.

## D. Ineffective Assistance of Counsel

¶43 Lastly, Gutierrez argues that he was denied effective assistance of counsel based on his counsel's decisions not to further examine or exercise a peremptory strike on Juror R.G., and not to call Gutierrez's mother as a witness. Implicit in a criminal defendant's right to counsel is the guarantee that such counsel provides effective assistance. See U.S. Const. amends. VI, XIV; Wis. Const. Art I, § 7; see also Strickland v. Washington,

---

[12] As the circuit court itself recognized in its oral ruling denying postconviction relief, the better practice would have been to follow up with an equivocating juror to elicit more definitive answers to these important questions.

466 U.S. 668, 686 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel." (quoted source omitted)).

¶44 To demonstrate that counsel's assistance was ineffective, the defendant must satisfy both prongs of the test announced by the United States Supreme Court in Strickland, 466 U.S. at 687.  First, the defendant must demonstrate that counsel's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the defendant must show prejudice by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  A failure to satisfy either prong eliminates the need to consider the other. Id. at 697.

¶45 As to counsel's decision not to further examine or strike Juror R.G., Gutierrez cannot establish prejudice.  Prejudice requires that counsel's performance resulted in the seating of a biased juror. See State v. Koller, 2001 WI App 253, ¶14, 248 Wis. 2d 259, 635 N.W.2d 838 (citing State v. Lindell, 2001 WI 108, ¶81, 245 Wis. 2d 689, 629 N.W.2d 223; State v. Traylor, 170 Wis. 2d 393, 400-01, 489 N.W.2d 626 (Ct. App. 1992)).  This record does not support more than "rank speculation" that Juror R.G. was biased, see supra, ¶42, which is insufficient to establish prejudice.  Erickson, 227 Wis. 2d at 774; see also Lepsch, 374 Wis. 2d 98, ¶37.  Because Gutierrez cannot demonstrate that he was

21

prejudiced as a result of his counsel's conduct, we need not address whether his counsel's performance was deficient. Strickland, 466 U.S. at 697.

¶46 Regarding counsel's decision not to call Gutierrez's mother as a witness, Gutierrez cannot demonstrate deficient performance. Deficient performance requires that counsel's performance fell below "an objective standard of reasonableness." Id. at 688. Gutierrez must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Our review is "highly deferential" and we do "not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." State v. Breitzman, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (alteration in original) (quoting State v. Domke, 2011 WI 95, ¶49, 337 Wis. 2d 268, 805 N.W.2d 364).

¶47 Defense counsel articulated several reasons why he opted not to call Gutierrez's mother as a witness at trial. Recognizing that "this was obviously a case about credibility," defense counsel was concerned that Gutierrez's mother's credibility would be undermined because she did not immediately report A.R.'s recantation and provided few details surrounding when A.R. made her recantation and why A.R. was with her in Texas at the time. Defense counsel stated that he judged Gutierrez's mother to be "a loose cannon" who "loved to talk" and "would just go off on something else" in response to any question. Ultimately, he

22

decided that calling her as a witness would not benefit Gutierrez's case.[13]

¶48 In a trial where credibility is paramount, it is reasonable not to call a witness whose perceived inability to give clear, coherent responses may subject her to a damaging cross-examination.  Defense counsel was legitimately concerned that the jury would view the defendant calling his mother to the stand with an unreliable story as a desperate measure.  Since defense counsel pursued a strategy within "the wide range of reasonable professional assistance," Gutierrez has failed to establish his counsel's performance was unconstitutionally deficient.  Strickland, 466 U.S. at 689.  Absent this showing, we need not address his claim of prejudice.  Id. at 697.

## IV.  CONCLUSION

¶49 We conclude that the court of appeals erroneously reversed the circuit court's exercise of discretion in excluding unidentified DNA evidence.  We further conclude that the court of appeals properly affirmed the circuit court's admission of the other acts evidence.  Lastly, we conclude that Gutierrez was not denied his right to an impartial jury or his right to effective

---

[13] Gutierrez attempts to rebut defense counsel's articulated rationale, citing his mother's post-trial testimony at the Machner hearing.  However, these later statements tell us little about what his counsel observed leading up to trial.  See Strickland v. Washington, 466 U.S. 668, 689 (1984) (emphasizing the need to "evaluate the conduct from counsel's perspective at the time" to "eliminate the distorting effects of hindsight").  Moreover, the circuit court noted that Gutierrez's mother's testimony at the Machner hearing was "littered with examples of the witness answering unasked questions, veering away from the question asked to some unrelated or tangential topic all while on direct."

23

assistance of counsel.  Accordingly, we reverse the court of appeals' decision as to the unidentified DNA evidence and affirm its decision as to the other acts evidence.  We also affirm the circuit court's denial of Gutierrez's postconviction motion.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶50  BRIAN HAGEDORN, J., did not participate.

¶51  ANN WALSH BRADLEY, J., withdrew from participation.

24