COURT OF APPEALS
DECISION
DATED AND FILED

March 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP477-CR**

Cir. Ct. No. 2020CF714

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ROBERT RONYELL PIGGEE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sheboygan County:  SAMANTHA R. BASTIL, Judge.  *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Robert Ronyell Piggee appeals a judgment of conviction, entered following a jury trial, for misdemeanor battery, felony strangulation, and felony intimidation of a victim by threat of force, violence or injury.  He also appeals an order denying his postconviction motion.  Piggee argues his trial counsel was constitutionally ineffective in two ways: first, by failing to review and object at trial to a recording of a police interview with Piggee; and second, by failing to impeach the victim with alleged inconsistencies between the victim's trial testimony and her testimony at Piggee's revocation hearing.[1]  We reject Piggee's arguments and affirm.

## BACKGROUND

¶2     In September 2020, police responded to reports of a physical altercation at the residence of a woman with whom Piggee had been in a sexual relationship.  Officers arrived to a home in disarray.  The victim reported that Piggee had kicked her, punched her, and strangled her after she confronted him with text messages from Piggee's ex-girlfriend.  The victim told police that Piggee had taken her phone and told her that if she called the police, he would kill her.

¶3     Piggee proceeded to a jury trial on the three crimes of conviction, at which the victim testified about the assault.  After Piggee violently beat her in the bedroom, the victim attempted to go into the living room to call for help using her house phone.[2]  She testified Piggee "knew what [she] was trying to do," came up

---

[1] Piggee states he "effectively conceded" the misdemeanor battery charge at trial, and therefore his allegations of ineffective assistance of counsel do not touch upon that resulting conviction.

[2] The victim testified Piggee had earlier taken her cell phone and "chucked it somewhere around my house."

2

behind her, and grabbed the phone. They battled for control of the phone, then Piggee ripped the backing off and threw the disassembled receiver. The victim testified that as Piggee did so, he told her if she called the police, she was going to die. The victim retreated to the bedroom, where Piggee pushed her face down on the bed and yanked her t-shirt "as tight as he could" against her neck, causing her to gasp for air.

¶4    After additional eyewitness testimony and testimony from the treating nurse, the State introduced the testimony of a police officer who had interviewed Piggee following the assault. The prosecutor played a bodycam recording of portions of the interview, during which Piggee claimed he had done nothing more than push the victim after she initiated a physical altercation. Piggee denied strangling the victim, exclaiming, "If I'd have touched her neck, I'd have choked her out. Trust me, as pissed as I was, and going through … man, I'd have choked her the fuck out."[3] As Piggee made these statements, he held up his hands in a mock strangulation gesture. Defense counsel did not object to the recording's introduction or admission.

¶5    Piggee was convicted of all counts. Prior to sentencing, he filed a postconviction motion seeking a new trial. As grounds, Piggee asserted that his trial attorney had overlooked the bodycam footage during trial preparation and was taken by surprise when the footage was played for the jury. Counsel made a decision not to object, fearing that he had missed the footage during his review of the discovery and that the jury would believe he was trying to hide something. Essentially, Piggee's postconviction argument was that the footage was so

---

[3] Quotations from the recording are based on this court's review of the footage.

prejudicial that the interests of justice required a new trial at which defense counsel was prepared to handle that evidence.

¶6 The circuit court denied the motion, and Piggee brought a second postconviction motion, this time alleging ineffective assistance of trial counsel. Piggee asserted that his trial counsel was constitutionally ineffective for failing to review and object to the bodycam footage and for failing to impeach the victim with the description of the assault she gave at Piggee's revocation hearing.

¶7 On the latter point, at the revocation hearing the victim had largely given narrative testimony that tracked her trial testimony, including her recounting of Piggee's threats to kill her and her description of Piggee ripping the phone from her hand. However, her account at the revocation hearing did not explicitly link any threat of death to her calling the police. Piggee thought this was a significant omission; he argued the State's case on the intimidation charge would have been significantly weakened if his trial attorney had impeached the victim with her revocation hearing testimony.

¶8 The circuit court disagreed and denied Piggee's motion following a *Machner* hearing.[4] The court accepted Piggee's allegations of deficient performance, but it concluded that Piggee had failed to demonstrate prejudice stemming from counsel's overlooking the bodycam recording or from counsel's failure to impeach the victim with her statements at the revocation hearing. Piggee now appeals.

---

[4] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

**DISCUSSION**

¶9     On appeal, Piggee renews his postconviction arguments that his attorney was constitutionally ineffective.  He argues the bodycam footage of his interrogation was highly prejudicial and his trial attorney performed deficiently by failing to review it and object to it.  He also argues his trial attorney should have impeached the victim with her revocation testimony, during which the victim did not explicitly link threats to her life with her attempts to call police.  Piggee asserts that even though, "[a]t first glance, [t]rial [c]ounsel's performance appears reasonable," it was rendered unreasonable by the relative weakness of the State's evidence on the felony charges.

¶10     The Sixth Amendment guarantees a defendant the effective assistance of counsel.  *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838.  We review an ineffective assistance of counsel claim using a mixed standard of review.  *Id.*, ¶25.  The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance.  *Id.*

¶11     To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *Id.*; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If the defendant fails to establish either prong, we need not address the other.  *Savage*, 395 Wis. 2d 1, ¶25.

¶12     To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id.*, ¶28.  We presume that

counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

> I.   *Piggee's trial counsel did not perform deficiently by failing to object to the bodycam footage of his interrogation, and any alleged deficiency did not prejudice his trial defense.*

¶13   We agree with Piggee that trial counsel should have reviewed the bodycam recording of his interrogation prior to trial, and his failure to do so constituted deficient performance. "In a felony case where the client potentially faces significant prison time, it falls below objective standards of reasonableness to fail to read all portions of discovery that may have the potential to educe information that is either beneficial or damaging to the client's cause." *State v. Thiel*, 2003 WI 111, ¶37, 264 Wis. 2d 571, 665 N.W.2d 305.

¶14   It does not follow, however, that Piggee's trial counsel was deficient for failing to object to the bodycam footage, or that Piggee suffered prejudice as a result of his failure to do so. The statement was an admission by a party opponent and therefore was not hearsay. *See* WIS. STAT. § 908.01(4)(b) (2023-24).[5] Indeed, Piggee is vague about what basis his counsel would have had to object to the recording.

¶15   At the *Machner* hearing, Piggee's trial counsel testified that had he been aware of the recording, he would have "included it in my motion in limine

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[requesting] that it be struck for prejudicial effect on the jury." Piggee's ineffective assistance claim, then, turns on whether the evidence would have been excluded under WIS. STAT. § 904.03.

¶16 Under WIS. STAT. § 904.03, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In this context, "unfair prejudice" refers to a situation where the evidence influences the outcome by improper means or appeals to the jury's sympathies, arouses its sense of horror, provokes an instinct to punish, or otherwise causes a jury to base its decision on something other than the facts. *State v. Gutierrez*, 2020 WI 52, ¶35, 391 Wis. 2d 799, 943 N.W.2d 870.

¶17 As the State points out, this standard is an "uphill battle" for Piggee. The recording showed Piggee simultaneously denying choking the victim but gesticulating how he would have choked her given his angry emotional state. Contrary to Piggee's assertions, the portion of the recording played for the jury was both relevant and probative, insofar as it contained information supporting both guilt and acquittal. *See State v. Marinez*, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399 ("The probative value of evidence 'is a function of its relevance under WIS. STAT. § 904.01.'" (quoted source omitted)); § 904.01 (defining relevancy as encompassing any evidence with a tendency to make the existence of a consequential fact more or less probable).

¶18 Against this backdrop, there can be no meritorious assertion that the footage had an unfairly prejudicial effect that substantially outweighed its probative value. Piggee's arguments in this regard ring hollow. He merely asserts that the segment "gave the jury a haunting and prejudicial image of Piggee: it

shows an animated Piggee in a concrete-walled-interview room imitating how he would choke the victim."

¶19     The recording is undoubtedly prejudicial, if one draws the inference that Piggee choked the victim in exactly the way he claimed not to have done.  But this is the type of ordinary prejudice typically attendant to evidence that harms the opposing party's case.  *See Marinez*, 331 Wis. 2d 568, ¶41.  The recording does not carry the kind of unfair prejudice that invites the jury to decide the case on something other than its facts.  Because any motion in limine based on WIS. STAT. § 904.03 would have been denied, Piggee's trial attorney was not deficient for failing to raise the issue, nor can we conclude Piggee was prejudiced by counsel's failure to object.  *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110.

¶20     Piggee also vaguely suggests that his attorney should have sought ways to "limit the impact" from the footage, presumably by modifying his trial strategy in some way.  Trial counsel's strategy was to portray the victim as a jilted lover and the physical aggressor during the confrontation.  The recording supported that strategy, insofar as it allowed the jury to hear, in Piggee's own words, how the victim was the aggressor without subjecting him to cross-examination.  Moreover, his trial attorney did discuss the footage as part of his closing argument.  Piggee does not explain how his attorney should have

modified his arguments or trial approach in light of the recording, and therefore has failed to establish deficient performance or prejudice on that basis.[6]

¶21   In emphasizing the alleged prejudicial effect of the recording, Piggee repeatedly mentions that the jury requested to view the footage during its deliberations.  What he fails to mention is that he personally requested that the jury view the recording a second time.  The circuit court, Piggee's trial counsel, and the prosecutor were all in agreement to deny the request and instruct the jury to rely on its recollection when Piggee informed his attorney that he wanted the recording played.  Whatever prejudicial effect Piggee now claims, it was not enough to dissuade him from requesting that the jury view the recording during its deliberations.

II.   *Piggee's trial counsel did not perform deficiently by failing to cross-examine the victim with testimony from Piggee's revocation hearing, nor did Piggee suffer constitutional prejudice.*

¶22   Piggee next argues his trial counsel was constitutionally ineffective because he "failed to present the jury with available inconsistent statements casting doubt on [the victim's] credibility."  Piggee focuses on the victim's testimony during the revocation hearing that Piggee threatened to kill her, with her testimony there omitting a direct connection between the threat and a purpose to prevent the victim from calling the police.  Piggee argues that the failure to present the revocation hearing testimony was both deficient performance and prejudicial

---

[6] Piggee testified at the postconviction hearing that if he had known of the recording, he would have accepted the State's pretrial plea offer.  Though Piggee's appellate brief highlights this testimony, the relief Piggee seeks consists solely of a new trial.  His arguments do not address the plea offer, and we accordingly limit our examination of deficiency and prejudice to the trial proceedings.

because it was the only evidence that undermined the elements of felony intimidation.[7]

¶23 We easily reject Piggee's ineffective assistance of counsel claim regarding the victim's revocation hearing testimony. There were no major inconsistencies in the descriptions of the assault the victim gave. Even without the explicit statement linking the threat with the victim's attempt to call the police, the connection was readily inferable in light of the victim's testimony at the revocation hearing, in which she stated—immediately after describing how Piggee had destroyed the phone receiver in her hand—that "throughout the mix of this, he [did tell me he] was going to kill me."

¶24 Piggee's trial counsel also recognized that the victim's trial testimony and revocation hearing testimony "tended to be consistent." He was focused on his defense theory, "making sure … that the jury understood that this was a self-defense claim, that the [victim] had basically lied about the nature of their relationship, and … demonstrat[ing] that [the victim], in fact, did strike him first and that we had witnesses that would testify to that fact." Trial counsel believed he was able to effectively cross-examine the victim without getting into the minutiae of what occurred at the revocation hearing. And, the failure to present any arguable inconsistencies in the victim's testimony did not preclude Piggee's trial counsel from arguing during closing that the victim was a "graduate of the university of exaggeration" and had substantially embellished the nature of the altercation.

---

[7] The jury was instructed using WIS JI—CRIMINAL 1296, which requires proof that Piggee knowingly and maliciously attempted to prevent the victim from reporting the crime to any law enforcement agency.

¶25 Additionally, we cannot conclude there is a reasonable probability of a different outcome if the victim had been impeached with her revocation hearing testimony. Piggee's trial counsel based his knowledge of the victim's revocation testimony on a narrative statement she had given Department of Corrections personnel on September 17, 2020. In that statement, the victim told the agent that Piggee stated that "someone will come after her family and kill them if she would ever call the cops" and that her family "isn't safe if you call the cops." Any attempt to impeach the victim by highlighting any supposed "inconsistency" between her trial testimony and her revocation testimony would likely have been met by a prosecutorial rehabilitation effort featuring these statements.

¶26 Piggee contends that the State presented only the victim's account in support of the intimidation charge, and the fact that the victim's credibility was key only accentuates his trial counsel's failure to cross-examine using the victim's revocation testimony. He likens this case to ***State v. Gilbert***, No. 2019AP2182-CR, unpublished slip. op (WI App June 22, 2021), but that case featured witnesses with evolving stories and dramatic inconsistencies between accounts of the relevant events, coupled with the complete failure to call any witnesses in support of the defendant at trial. *See **id.***, ¶¶34-35, 39. As explained above, we do not perceive his trial counsel's failure to highlight the sole arguable inconsistency Piggee advances to undermine our confidence in the outcome of the trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

11