**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 16, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1908**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019ME25

**IN COURT OF APPEALS**
**DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF T. W.:

MARQUETTE COUNTY,

    PETITIONER-RESPONDENT,

 V.

T. W.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Marquette County: TERESA S. BASILIERE, Judge. *Affirmed*.

¶1 BLANCHARD, P.J.[1] In September 2019, the Circuit Court of Marquette County entered an order involuntarily committing T.W. for mental health treatment for six months, pursuant to WIS. STAT. § 51.20. The court's order was based on jury findings at a trial that T.W. was mentally ill, a danger to himself or others, and a proper subject for treatment. The petition for commitment by the Marquette County corporation counsel involved allegations of violent conduct by T.W. After hearing additional evidence following the jury trial, the circuit court entered an order for involuntary medication during the mental health commitment.[2] T.W. appeals both orders, arguing that the court either erroneously exercised its discretion or erred as a matter of law in allowing the admission of several categories of evidence at trial. Marquette County argues that this appeal is moot, that T.W. forfeited his merits arguments by failing to raise them in the circuit court, that the court did not err in allowing the evidence (but that, even if it did, any errors were harmless), and that there was no plain error. I conclude that the County fails to establish that the appeal is moot, but I affirm for the reasons explained below.

## BACKGROUND

¶2 In July 2019, T.W. was residing in a group home in Madison. A group home case manager reported to police that T.W. had "choked" the case manager after T.W. refused to take medications.[3] Based on this incident, T.W.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] While it is not the focus of this appeal, I note for context that in February 2020 T.W. was recommitted for a term of one year. *See* WIS. STAT. § 51.20(13)(g)2r. and 3.

[3] Expanding on this factual background, there was testimony at the jury trial in this case that, on the same day in July 2019, which was the second day of T.W. refusing to take

(continued)

was detained on an emergency basis under WIS. STAT. § 51.15(1), and venue for the case was transferred to Marquette County. Through its corporation counsel, Marquette County sought to involuntarily commit T.W. for six months pursuant to WIS. STAT. § 51.20. The circuit court held a probable cause hearing. After hearing testimony from five witnesses—the group home case manager, a Madison police officer, an associate manager of a Dane County mental health crisis unit, a psychiatrist employed by the Winnebago Mental Health Institution in Oshkosh, and T.W. himself—the court determined that there was probable cause to support a commitment, allowing the case to proceed to a final hearing.[4]

¶3 At the jury trial, the County presented evidence that included expert testimony of psychologist Robert Schedgick and psychiatrist Robert Rawski. Each expert testified that he had conducted a mental health examination of T.W., although in each case T.W. declined the expert's request for a personal interview.

¶4 Dr. Schedgick testified in part as follows. Based on his review of various records, he created a report of examination, which was admitted into evidence. T.W. has a "diagnosis of schizoaffective disorder, depressive type." His symptoms include "sudden rapid change of moods accompanying …

---

medications: T.W. struck a care provider in the jaw "real hard," "out of the blue" on the provider's "blind side"; later T.W. punched a second care provider in the face; after which T.W. "choked" a case manager who was trying to get him to take his medications, and the case manager called police; a responding officer testified that T.W. approached the officer "very abruptly" and came "very close," "very focused on" the officer, and "loaded his rear leg," with his hands "clenched in fists," at which time three officers "required a good deal of force" to place T.W. in handcuffs.

[4] The Honorable John Jorgensen presided over the hearing and found probable cause, the Honorable Mark T. Slate issued the order for a final hearing based on the finding of probable cause, and the Honorable Teresa S. Basiliere presided over the jury trial and made the rulings challenged in this appeal.

psychotic behavior, typically delusions, and hallucinations." T.W. "is a danger to others" and is "a proper subject for treatment" because medication or other forms of treatment may control and improve his mental health.

¶5    Dr. Rawski testified in part as follows. Based on his review of various records—including one summarizing an interview that Dr. Rawski had conducted with T.W. in April 2019 and "records that summarize [a] 35 to 40 year history of treatable mental illness dating back to the early 1980's"—Dr. Rawski created an examination report that was admitted into evidence. T.W. has "[s]chizoaffective disorder," which is a "similar condition" to schizophrenia, but "is differentiated by a presence of mood symptoms that rise to the level of causing clinical distress and interfering with his functioning in addition to symptoms of schizophrenia." This has included "episodes" of "mania," "typically irritable mania," causing T.W. to exhibit "agitation, impulsivity, reckless behavior, impaired judgment, clearly acting before thinking," in addition to "psychotic symptoms such as delusions and hallucinations." When T.W. stops taking medication, he becomes "more paranoid, more agitated[,] more delusional, experience[s] more voices, start[s] losing sleep, which in turn, fuels more irritability and agitation and … almost invariably" results in him being "threatening, intimidating and hostile and final[ly] physically aggressive." "It is my opinion to a reasonable degree of medical certainty that the psychotic symptoms and the dangerousness [that T.W. presents are] direct result[s] of not taking the medications for his mental illness." T.W. is dangerous because he "refuses to believe" that he has a mental illness that requires treatment. His "symptoms are treatable" and "can be controlled." He "requires a locked inpatient unit for the safety of himself as well as the safety of staff and peers in the community."

4

¶6 T.W. did not testify at trial. Counsel for T.W. called as a witness a physician's assistant who testified to the following. Urine tests revealed that T.W. appeared to have a urinary tract infection at the time of the incident in the Madison group home and a urinary tract infection can in some cases produce an "[a]ltered mental status."

¶7 In closing argument, T.W. primarily argued that the County failed to meet its burden to prove that he was dangerous in light of evidence that T.W. contended raised the following reasonable inferences: (1) he was in fact taking his medications at the time of the incident at the Madison group home that brought a police response; and (2) at the time of the incident he was suffering from a urinary tract infection that was a contributor to his violent behavior.

¶8 The jury found that T.W. "is" "mentally ill," "dangerous to himself or others," and "a proper subject for treatment." Accordingly, the court filed an order of commitment for a term of six months.

¶9 After hearing separate testimony shortly after trial from psychiatrist Heidi Lundeen, who had T.W. as a patient at a mental health facility since his admission some weeks earlier, the court separately entered an order for involuntary medication and treatment. T.W. does not challenge this order on any independent ground.

¶10 T.W. appeals and the parties have briefed the issues, after significant delays.[5]

---

[5] The parties' briefing on appeal was completed on August 5, 2021, even though the challenged circuit court orders were filed nearly two years earlier, in September 2019. On six occasions, this court granted T.W.'s motions to extend deadlines to file a postjudgment motion or
(continued)

## DISCUSSION

### I.  MOOTNESS

¶11     The six-month period of commitment challenged by T.W. has expired, along with the accompanying order for involuntary medication or treatment.  For this reason, the County argues, this appeal is moot and it further contends that no exception to the mootness doctrine applies.  I reject this argument based on one position taken by T.W., which the County does not successfully rebut.  T.W. contends that the collateral consequences of the costs of caring for him, for which T.W. is subject to collection under WIS. STAT. § 46.10(2)-(3), prevent this appeal from being moot.

¶12     Mootness is a question of law that is reviewed on appeal under the de novo standard.  ***Marathon Cnty. v. D.K.***, 2020 WI 8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901.  "'An issue is moot when its resolution will have no practical effect on the underlying controversy.'"  ***Id.***, ¶19 (quoted sources omitted).  Moot issues are, as a general rule, not reviewed on appeal unless one or more of five exceptions apply.  ***Id.***  I conclude that the County fails to show that the appeal is moot and therefore I do not consider any of the exceptions to mootness.

¶13     T.W. points out that, pursuant to statute, he "shall be liable for the cost of the care, maintenance, services and supplies" that were provided to him during his commitment, which are costs that the department "shall" collect.  *See* WIS. STAT. § 46.10(2), (3).  T.W. further notes, without objection on the point

---

to file a notice of appeal, which delayed the filing of his notice of appeal from March 2020 to November 2020.  During 2021, this court granted three additional motions by T.W. to extend his briefing deadlines and two motions filed by the County for extensions in its briefing deadlines.

from the County, that the County cannot recover these costs if there was "no valid commitment order," as could be the case if T.W. were to prevail in this appeal. *See Jankowski v. Milwaukee Cnty.*, 104 Wis. 2d 431, 436-41, 312 N.W.2d 45 (1981).

¶14 On two recent occasions our supreme court has explicitly left open the possibility that this statutory obligation of committed persons to pay costs may or may not be a collateral consequence of sufficient import to render an appeal of a commitment order not moot. *See D.K.*, 390 Wis. 2d 50, ¶25 n.7; *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶28 n.11, 386 Wis. 2d 672, 927 N.W.2d 509.

¶15 Further, as T.W. notes, our supreme court has relied in part on collateral financial consequences of a criminal conviction, given the potential effect of these consequences on related civil proceedings, to determine that an appeal in the criminal case was not moot, even though the defendant had died while pursuing postconviction relief. *See State v. McDonald*, 144 Wis. 2d 531, 537-38, 424 N.W.2d 411 (1988) ("Because of these potential collateral consequences, it serves the interest of justice to continue the appeal."). Further, since the release of *D.K.* and *J.W.K.*, the court has favorably relied on reasoning in *McDonald* in the context of determining that an appeal in a mental commitment case was not moot, although the court in its recent opinion did not specifically mention *McDonald*'s reliance on collateral financial consequences. *See Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶26 n.5, 391 Wis. 2d. 231, 942 N.W.2d 277

(determining that appeal was not moot despite the death of the petitioner during the pendency of the appeal).[6]

¶16    The County does not dispute that T.W. is subject to collection for the costs of his care, nor does it more generally rebut other premises of T.W.'s argument.  It makes two points on this issue, both unproductive.  First, the County suggests that *Jankowski* could have no bearing on the mootness issue because it does not address mootness.  This misses the point.  The County does not dispute that, under *Jankowski*, there could be a well-defined, practical benefit to T.W. if he prevails in this appeal.   Second, the County surprisingly asserts that our supreme court would have deemed the appeal in *D.K.* moot if the court "wished to leave the door open to … non-constitutional collateral consequences."   This is incorrect.  The court in *D.K.* explicitly left open this very door, as it had in *J.W.K.*  *D.K.*, 390 Wis. 2d 50, ¶25 n. 7; *J.W.K.*, 386 Wis. 2d, ¶28 n.11.

¶17    Mootness may present a close issue here based on the current state of the law in Wisconsin.  But to say more would be to venture into potentially complicated legal terrain that extends well beyond the scope of the limited briefing by the parties on this issue.  Under all of the circumstances, I conclude that the County has not shown that this appeal is moot.

---

[6] In fairness to the County, T.W. makes his references to *State v. McDonald*, 144 Wis. 2d 531, 537-38, 424 N.W.2d 411 (1988), and *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶26 n.5, 391 Wis. 2d. 231, 942 N.W.2d 277, for the first time in his reply brief on appeal.  At the same time, however, T.W. squarely raises this potential collateral consequence in his opening brief as a reason to oppose a mootness determination.  Further, the court released *D.J.W.* well before the County filed its brief in this appeal.

## II. EVIDENCE OF AGGRESSIVE AND VIOLENT BEHAVIOR

¶18    T.W. argues that, before trial, the circuit court should have barred the admission of testimony given by the two experts relating to reports of aggressive and violent behavior by T.W. over the years, aside from the specific conduct at the Madison group home triggering the petition for commitment. This is so, T.W. contends, because all such testimony would be inadmissible "other acts" evidence under WIS. STAT. § 904.04(2).[7]    I provide additional pertinent background, additional applicable legal standards, and then explain why I reject this argument in discussion that includes references to further background.

### A.    Additional Background

¶19    T.W. filed three motions in limine in the circuit court that the parties reference in connection with this issue.

*"Other Acts" Motion*

¶20    One was a broad motion to bar all potential "other acts" evidence, without identifying any particular evidence for potential exclusion. It stated in its entirety that it sought an order stating the following:

---

[7] "Other acts" evidence is admissible if: (1) it is offered, not to prove "the character of a person in order to show that the person acted in conformity therewith," but instead is offered for a purpose such as showing "opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"; (2) it is relevant (meaning that is has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); and (3) its probative value is not substantially outweighed by the risk of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. §§ 904.04(2)(a), 904.01, 904.03; *State v. Gutierrez*, 2020 WI 52, ¶29, 391 Wis. 2d 799, 943 N.W.2d 870.

> That the County be prohibited from introducing any evidence concerning other acts, including but not limited to those underlying past civil commitments that may have been subject to litigation. WIS. STAT. § 904.04(2).

The County objected to this motion, arguing that T.W. was seeking to exclude evidence that the County should be allowed to offer "to prove a primary element of the County's case—that [T.W.] is mentally ill and dangerous," and not "to show a character trait or [that T.W.] act[ed] in conformity" with a character trait. The County analogized the situation to that presented in WIS. STAT. ch. 980 cases seeking the commitment of allegedly sexually violent persons. *See* ***State v. Franklin***, 2004 WI 38, ¶24, 270 Wis. 2d 271, 677 N.W.2d 276 (§ 904.04(2) does not apply to evidence offered in a commitment proceeding under ch. 980 to prove that the respondent has a mental disorder that makes it substantially probable that he or she will commit acts of sexual violence in the future.). In the ch. 980 context, "'[p]revious instances of violent behavior are an important indicator of future violent tendencies.'" *See* ***Franklin***, 270 Wis. 2d 271, ¶22 (quoting ***Kansas v. Hendricks***, 521 U.S. 346, 357-58 (1997)).

*"Prior Commitments" Motion*

¶21    T.W. separately filed a motion seeking an order providing the following:

> That although none are known to counsel at this time, that the County be prohibited from introducing any evidence or making reference to past civil commitments [of T.W.]. Such evidence is of very limited probative value beyond proving that [T.W.] may have acted in conformity with a particular character trait. WIS. STAT. § 904.04(1). Moreover, the probative value of any such evidence is outweighed by the creation of unfair prejudice to [T.W.] and confusion for the jury. WIS. STAT. § 904.03.

The County did not object to the "prior commitments" motion, subject to the County's objections to the "other acts" motion.

*"Otherwise Admissible" Motion*

¶22 The third potentially related motion was broad like T.W.'s "other acts" motion, in that it also did not identify particular evidence for potential exclusion. It sought an order providing:

> That the County be prohibited from eliciting facts or data that are otherwise inadmissible from its expert witnesses, unless the Court has previously determined that their probative value in assisting the jury to evaluate the expert's opinion or inference substantially outweighs their prejudicial effect. WIS. STAT. § 907.03.[8]

The County objected to the "otherwise inadmissible" motion, essentially contending that T.W. was requesting exclusion of evidence that would be "incredibly prejudicial" to the County's ability to elicit expert testimony regarding T.W.'s alleged mental illness, dangerousness, and amenability to treatment.

---

[8] WISCONSIN STAT. § 907.03 provides, with emphasis now added on a key phrase for the arguments made on appeal:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are *otherwise inadmissible* may not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion or inference substantially outweighs their prejudicial effect.

11

*Hearing And Rulings*

¶23     The circuit court held a hearing to address T.W.'s motions in limine, including the three quoted above. The court invited the parties to address each motion individually and it ruled on them one at a time. However, regarding the three motions just quoted, there was discussion by the parties and the court that overlapped. T.W. argued that the circuit court should order that evidence regarding any prior conduct of T.W. "should be limited to" events alleged in the emergency detention petition filed regarding the July 2019 incident at the Madison group home. Relatedly, T.W. argued that the court should prohibit the County from eliciting testimony from either of the two experts that referred to *any* conduct of T.W. that was referenced in any records created and maintained as part of evaluations and treatments of T.W. over the years that predated the incident at the Madison group home. T.W. characterized his target for exclusion in nearly boundless terms: "anything historically asserted." He generically alleged that "historic information" in the reports of the experts was "irrelevant information arguably," but did not point to specific irrelevant information in the expert reports.

¶24     The court ruled as follows on the three potentially related motions:

- **"Other acts" motion.** T.W. failed to show the need for a blanket exclusion of reference to all of his alleged conduct outside of that involving the incident at the Madison group home. The court determined that evidence of T.W.'s "history of mental illness" should not "be precluded."

- **"Prior commitments" motion.** The County was precluded from eliciting evidence that T.W. had ever been the subject of a prior mental commitment. The court expressed the view that such evidence "can be extremely prejudicial" to someone in T.W.'s position.

- **"Otherwise inadmissible" motion.** Rulings withheld. The court deemed the motion to be "vague." The court also observed that it was

12

circular, in that it asked the court to declare a useless generality: no inadmissible evidence would be admitted. The court explained that it would consider T.W.'s objections to specific offered evidence when T.W. made objections at trial.

*Failures To Object At Trial*

¶25 The County submits that, throughout trial, T.W. raised no objection to testimony or the admission of other evidence on the topics referenced in these three motions. T.W. does not dispute this. Instead, T.W. takes the position that his motions in limine were sufficient to preserve these issues for appeal.

### B. Legal Standards

¶26 "A decision to admit or exclude evidence is within the circuit court's discretion," and will be reversed "only if the circuit court erroneously exercised its discretion." *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870. This means that an evidentiary decision is upheld on appeal if "the circuit court applied the proper legal standard to the relevant facts and reached a reasonable discretionary decision," and an appellate court "'may not substitute its discretion for that of the circuit court.'" *Id.*, ¶27 (quoted source omitted).

¶27 As to the forfeiture of issues based on a failure to preserve them in the circuit court, "'[t]he general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.'" *State v. Brereton*, 2013 WI 17, ¶19, 345 Wis. 2d 563, 826 N.W.2d 369 (alteration in *Brereton*) (quoted source omitted). While appellate courts "may choose to consider such issues, countervailing considerations of fairness, efficiency, and institutional competency are generally persuasive when determining whether an issue raised for the first time on appeal should be addressed." *Id.* One exception is the plain error doctrine. This permits appellate courts to review "fundamental" errors that are

otherwise forfeited by the failure to object in the circuit court. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. A plain error is "fundamental, obvious, and substantial," such as when "'a basic constitutional right has not been extended to the accused[.]'" *Id.*, ¶¶21, 23 (quoted source omitted). Appellate courts will deem an error to be "'plain'" only "sparingly." *State v. Bell*, 2018 WI 28, ¶12, 380 Wis. 2d 616, 909 N.W.2d 750 (quoted source omitted).

¶28 Regarding circuit court error that might be deemed harmless, "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party." WIS. STAT. § 51.20(10)(c); *see also* WIS. STAT. § 805.18(2); *S.Y. v. Eau Claire Cnty.*, 156 Wis. 2d 317, 328, 457 N.W.2d 326 (Ct. App. 1990) (deeming admission of expert's testimony in involuntary commitment proceeding to be harmless error). Applying the harmless error rule in the evidentiary context, in criminal cases, courts consider factors that include: (1) the frequency of the error; (2) the importance of the erroneously included or excluded evidence to the prosecution's or defense's case; (3) the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence; (4) whether erroneously excluded evidence merely duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case. *State v. Martin*, 2012 WI 96, ¶46, 343 Wis. 2d 278, 816 N.W.2d 270.

### C. Analysis

¶29 I assume without deciding that T.W. did not forfeit the specific positions he advanced in his three motions in limine by failing to preserve them in

the circuit court. *See State v. Bergeron*, 162 Wis. 2d 521, 529, 470 N.W.2d 322 (Ct. App. 1991) (a motion in limine based on a specific argument is sufficient to preserve, for purposes of appeal, an objection to the admissibility of evidence based on that argument). However, to avoid forfeiture on appeal T.W.'s arguments on appeal must be limited to the specific arguments that he made in the motions in limine. *See State v. Bustamante*, 201 Wis. 2d 562, 573, 549 N.W.2d 746 (Ct. App. 1996) ("[I]f the issue raised by appeal is different in fact or law from that presented by the motion in limine, then [forfeiture] may be found if no objection was made at trial.") (citing *Bergeron*, 162 Wis. 2d at 529). As I explain below, when T.W. is held to the particular motions in limine that he actually made, those arguments fail for various reasons, and any new arguments that he may now intend to make based on the plain error doctrine are either undeveloped or unavailing.

### 1. "Other Acts" Motion

¶30 I assume without deciding that, if presented with proper arguments, a circuit court presiding over a WIS. STAT. ch. 51 mental commitment jury trial could be obligated to exercise its discretion to apply the rule barring character evidence established in WIS. STAT. § 904.04(2) to exclude evidence (in addition to applying the standards contained in WIS. STAT. §§ 904.01, 904.03). *See* WIS. STAT. § 51.20(10)(c) ("Except as otherwise provided in this chapter, the rules of evidence in civil actions and [WIS. STAT. §] 801.01(2) apply to any judicial proceeding or hearing under this chapter."). Thus, I put to the side the County's analogy to WIS. STAT. ch. 980 commitment cases and *Franklin*, and assume that the circuit court was obligated to exercise its discretion to consider applying § 904.04(2) based on T.W.'s "other acts" motion in limine.

¶31    T.W. argues that the circuit court should have excluded "any evidence that he was aggressive or violent in the years preceding the emergency detention" based on the incident at the Madison group home because it "was irrelevant and[,] worse, was prejudicial to T.W." To support this argument, T.W. cites precedent from the U.S. Supreme Court and our supreme court that, in order to satisfy constitutional requirements, the findings of mental illness and dangerousness in a mental commitment case "must be current, not retrospective." *See **J.W.K.***, 386 Wis. 2d 672, ¶16 (citing ***Foucha v. Louisiana***, 504 U.S. 71, 77-78 (1992)). I reject T.W.'s argument for the following reasons.

¶32    On this topic, T.W. made sweeping arguments not tied to any specific potential evidence in the circuit court and continues in the same mode on appeal. He does not begin to provide a basis to conclude that the circuit court did not apply a proper legal standard to the relevant facts and reach a reasonable discretionary decision as to the admission of any particular evidence. Put differently, he fails to explain why the circuit court did not have a reasonable basis to deny his pretrial request for a blanket order that would have prohibited the County from eliciting any evidence whatsoever about T.W.'s behavior that did not involve the events alleged in the emergency detention petition regarding the July 2019 incident at the Madison group home.

¶33    Much could be said about weaknesses in T.W.'s position that the circuit court erroneously exercised its discretion in denying the broad "other acts" motion. But one of many examples of potential evidence in the case is sufficient to illustrate the point. Dr. Rawski's report was available to the parties and the circuit court as potential evidence at the time the court ruled on the motions in limine. Dr. Rawski noted in his report that medical records reflected the following

events in June 2018, when authorized personnel attempted to administer an injection to T.W.:

> [T.W.] became combative and attempted to hit and swing at the staff, clench his fists and was resistive to the injection. Once the injection was administered, staff slowly backed away from him, at which time he lunged at staff and stomped his foot in an intimidating fashion, asking, "You scared?"

At least on its face, this evidence regarding events allegedly occurring not long before the incident at the Madison group home could be highly probative in assessing Dr. Rawski's opinion, also stated in his report, that T.W. "has extremely poor insight into his mental illness, the associated dangerousness, his historical response to adequate and inadequate treatment, and the expectable risks of removing psychotropic treatment altogether." The "other acts" motion made no attempt to apply the three-prong WIS. STAT. § 904.04 to any of the many incidents of this type that were potentially at issue at trial.

¶34 To the extent that T.W. intends to argue in the alternative that it constituted plain error for the circuit court to have allowed evidence that might be deemed "other acts" to be admitted at trial, without objection by T.W., any such argument would be completely undeveloped. In his opening appellate brief, T.W. makes generic references to "the other acts evidence," but fails to point to any particular "other acts" evidence admitted at trial, much less to evidence, the admission of which constituted "fundamental, obvious, and substantial" error. Not until his reply brief on appeal does he allude to specific evidence, but even then he fails to develop an argument based on the specifics.

### 2. "Prior Commitments" Motion

¶35    T.W. argues that the experts, in testifying at trial, violated the circuit court's pretrial order prohibiting references to the existence of his prior mental commitments. The County contends that the specific references which the experts made to T.W.'s history of treatment failed to identify a prior commitment, and that instead T.W. "tangentially points to instances where witnesses testified about T.W.'s prior hospitalizations and treatment." In the alternative, the County argues harmless error. I reject T.W.'s argument based on harmless error.

¶36    On a threshold issue, I reject the County's first argument. I conclude that the experts' trial testimony provided a sufficient basis for a reasonable jury to readily deduce that T.W. had been subject to mental commitments in the past, even if the testimony did not include a specific reference along the lines of, "T.W. was ordered committed on date X by Judge Y in County Z."[9] I do not construe the

---

[9] Notable was the following testimony by Dr. Rawski, which includes unmistakable references to commitments, even if jurors might not have understood all details regarding associated legal procedures and standards:

> [T.W.] has been in inpatient settings or in community placements for most of the last almost 30 years now and all of the last 15 to 17 years. And so he was moving toward community placement in [the] spring of this year and they finally accomplished that, and I believe it was May when he was finally discharged from Trempe[a]leau after having been there for two years[,] which is different than Winnebago. You start in a locked unit but then you eventually move to less restrictive units based upon your behavior and your participation and your compliance.

The jury had context for the "Trempealeau" and "Winnebago" references in this testimony. For example, as to "Trempealeau," Dr. Rawski had in earlier testimony referred to "inpatient records over the last couple of years at the Trempe[a]leau County Health Care Center." As to "Winnebago," pertinent prior testimony included Dr. Schedgick stating that he "went to the Winnebago Mental Health Institute on August 12" and "requested to see" T.W., after which T.W. "was brought out by the nurse." These and other references that the jury heard at trial provided a

(continued)

18

circuit court's order to have been limited to precluding only such specific references.[10]

¶37    Neither side presents a robust argument on the harmless error topic. I conclude that the nature of the references from which jurors could readily deduce prior commitments supports the County's argument of harmless error, when considered in the context of the extensive, consistent, and overlapping testimony of the two experts and the essentially unrebutted testimony about the specific alleged violent conduct at the Madison group home.

¶38    I make three observations in support of that conclusion. First, T.W. fails to point to examples of the County explicitly referring at trial to the fact of prior commitments or otherwise improperly exploiting this testimony during trial. Second, the testimony of each of the experts conveyed the professional opinion that, in order to properly present their views on the issues at trial, it was necessary for them to explain to the jury T.W.'s long history of mental illness, including facts regarding both successful and unsuccessful attempts at treatment, and why the experts concluded that some treatment efforts had failed over the years. If T.W. intends to argue that it was an erroneous exercise of discretion for the circuit court to consider some or all of that history to be relevant, he fails to develop the argument. In that sense, the references made by the experts that strongly

_____

strong basis for the jury to deduce that T.W. had been previously committed and confined in these institutions.

[10] It would appear that the County and its witnesses faced significant potential challenges in conveying relevant treatment and behavioral history at a trial of this type while omitting any references that would allow jurors to readily deduce that T.W. had previously been committed. But the County failed to raise concerns along these lines when the circuit court was considering and making rulings based on the motions in limine. Further, the County does not now argue that the circuit court erroneously exercised its discretion in making this ruling.

suggested the existence of prior commitments heavily overlapped with the untainted evidence. Third, the nature of the defense at trial essentially involved a disputed medical-mental health diagnosis: whether T.W.'s actions at the Madison group home were driven primarily or in substantial part by the urinary tract infection, and not at all or to a lesser degree by mental illness.[11] T.W. fails to persuade me that learning of the existence of previous commitments would have clouded the ability of a reasonable jury to give fair consideration to this defense, including the ability to assess what the experts testified to on direct and cross examination regarding possible effects of the urinary tract infection.

### 3. "Otherwise Inadmissible" Motion

¶39 T.W.'s briefing on this topic is undeveloped and I reject his argument on that ground. At best, T.W.'s "otherwise inadmissible" evidence motion invited the circuit court to rule before trial that *any and all* references to "facts or data" by either expert was presumed to be inadmissible. It is hard to see how the court, in the exercise of its discretion, could have granted the motion as it was framed. Now, on appeal, T.W. asserts that the "otherwise inadmissible" evidence at issue was evidence presented at trial by the experts that he now submits constituted *hearsay statements.* He fails to present an argument on appeal involving hearsay that bears any resemblance to the generically phrased motion in limine that he presented to the circuit court. The word "hearsay" does not appear a single time in the motion in limine, and the word was not used by anyone, even

---

[11] Counsel explained to the jury in opening that T.W. had a urinary tract infection at the time of the incident at the Madison group home, which constituted "the thrust of what we're talking about here." This prepared the jury to maintain a focus throughout trial on the infection and its possible effects on T.W.'s behavior.

once, in connection with discussion of any motion in limine at the hearing at which the parties presented arguments and the circuit court made its rulings. Given the generic nature of the motion in limine, the circuit court had no reason to think that it was not aimed at issues other than hearsay. For that matter, T.W. gave the circuit court no reason to think that T.W. might be able to identify *only some* testimony in this broad category that would be inadmissible hearsay, while other testimony in the category would be admissible. Therefore, granting the generic motion would have risked improperly barring the County from offering evidence that it should have been allowed to offer. In sum, T.W.'s motion in limine provided an insufficient basis to support the argument that he now makes on appeal.

### III.  HEARSAY

¶40    As noted, T.W. failed even to use the word "hearsay" in his motions in limine. However, during the course of trial he made the following four objections that referenced the concept of hearsay:

- After first raising a foundation objection to testimony by Dr. Schedgick about a delusion suffered by T.W. at the time of the incident at the Madison group home, T.W. briefly shifted to a hearsay objection, which was overruled on the ground that the testimony was necessary for the expert to explain the nature of the delusion.

- When Dr. Schedgick began to testify that T.W. had assaulted staff of the group home and at a mental health center, T.W. objected on the ground of hearsay. This was overruled, apparently on the ground that the testimony was not offered for its truth but to explain the expert's basis for a finding of dangerousness.

- When a police officer testified about a caregiver at the Madison group home relating that T.W. had punched him in the face, T.W. objected on the ground of hearsay and the objection was sustained.

- When a clinical manager at a Madison mental health center testified about evidence of violent acts by T.W. at the Madison group home, T.W. objected on the ground of hearsay, the objection was sustained and the court directed the jury to disregard the witness's use of the term "violent."

Thus, T.W. at trial used the word hearsay in objecting only twice during the testimony of expert witnesses and prevailed on two of his hearsay objections.

¶41    T.W. does not persuade me that the circuit court's discretionary decision to overrule the objection to Dr. Schedgick's reference in his testimony to a delusion, or its decision to overrule the objection to his reference to evidence that T.W. had been assaultive, could have been clearly erroneous.

¶42    The first objected-to testimony by Dr. Schedgick was somewhat confusing:

> One of the delusions [that T.W. had at the time of the incident at the Madison group home] was the belief that an ad from the television had told him that prescription drugs he was taking are delusional.

The jury separately heard, without objection by T.W., the following, less confusing, testimony from the clinical manager at a Madison mental health center:

> [T.W.] informed me that he was told by a television commercial that he could not take medication, and I clarified that with him as to whether it was an advertisement that is frequently on television saying here is this medication and it is wonderful and you have all of these potential side effects.  He said, no, it was a commercial that specifically spoke to him telling him not to take medication because it was going to kill him.

T.W. does not even begin to explain how it could have been clearly erroneous for the circuit court to overrule a hearsay objection to the expert's testimony when he raises no concern at all about the same information being related to the jury, much

22

more clearly, by the clinical manager. Further, given the testimony of the clinical manager, any error in admitting the expert's testimony would have to be harmless.

¶43 Similarly, the substance of the second objected-to testimony by Dr. Schedgick was admitted without objection by T.W., through testimony by the caregiver at the Madison group home, the case manager at the group home, an officer who responded to the incident at the group home, and the clinical manager at the Madison mental health center. The clinical manager specifically testified, without objection, that T.W. "freely admitted" that he had been violent toward staff.

¶44 As with the issues above, if T.W. intends to argue that the circuit court committed plain error in allowing particular testimony that the court should have recognized constituted hearsay, he fails to develop an argument based on pertinent legal principles as applied to specific references to the record, as opposed to mere generalities.

*By the Court*.—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

23