COURT OF APPEALS
DECISION
DATED AND FILED

April 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1772-CR**

Cir. Ct. No. **2016CF1848**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CARL LEON BARRETT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS and STEPHANIE ROTHSTEIN, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Carl Leon Barrett appeals a judgment of conviction and an order denying his postconviction motion.[1]  On appeal, Barrett argues that: (1) the trial court erred by failing to give the castle doctrine jury instruction; (2) trial counsel was ineffective for failing to continually object to the prosecutor's leading questions; (3) the trial court erred by permitting the admission of testimony that Barrett was an abusive man; and (4) the trial court erred when it denied the defense's motion for a mistrial based on testimony that Barrett had been in jail.  As discussed below, we reject Barrett's arguments and affirm.

## BACKGROUND

¶2     The State charged Barrett with one count of first-degree reckless homicide with the use of a dangerous weapon, and one count of possession of a firearm by a felon.  The charges stemmed from the death of Jevontese T. Riley, who died as a result of gunshot wounds on March 17, 2016, in Milwaukee County.

¶3     According to the criminal complaint, Sonya Miller, Barrett's girlfriend, told police that she had an argument with Barrett at their residence. Stephanie Miller, Sonya's daughter, called Ceonte Miller-Barrett, Sonya and Barrett's son.  Ceonte arrived at the residence with two of his friends, E.J. and Riley.  According to E.J., when they entered the residence, Barrett started saying, "get the fuck out, why the fuck are you here?"  When E.J. observed Barrett raise his hand with a firearm, E.J. pulled out his firearm.  Barrett and E.J. exchanged shots.  E.J. was shot once in the leg and Riley was shot five times.

---

[1] The Honorable Mark A. Sanders presided over the trial and sentencing.  We refer to Judge Sanders as the trial court.  The Honorable Stephanie Rothstein presided over the postconviction proceedings.  We refer to Judge Rothstein as the postconviction court.

*Trial*

¶4      At trial, Stephanie, who was fifteen years old at the time of the shooting, testified that Sonya and Barrett were arguing, and Barrett choked and attempted to hit Sonya.  Stephanie called Ceonte for help.  When Ceonte arrived at the residence, Stephanie opened the door and let him in because he did not have a key.[2]  Ceonte had two people with him, E.J. and Riley.

¶5      According to Stephanie, Ceonte asked Barrett "why you putting your hands on my mama?"  Barrett stated, "what are you all doing here[?]"  Barrett then went into the room he shared with Sonya and returned with a silver gun.  Barrett stated a second time, "what are you all doing here[?]" and nobody responded.  Barrett then started shooting at Ceonte, E.J., and Riley.  Stephanie testified that E.J. and Riley did not say anything or threaten Barrett.  Stephanie also testified that she did not see E.J. or Riley display a gun.  It was only after Barrett began shooting that Stephanie saw E.J. pull out a gun and start firing back.

¶6      Sonya testified that she was in an "on and off" relationship with Barrett for approximately twenty years.  On the day of the shooting, Sonya and Barrett were arguing all day.  She testified that Stephanie called Ceonte to come over.  Stephanie let Ceonte in and Ceonte confronted Barrett, saying "why the 'F' you keep putting your hands on my mama[?]"  Barrett responded, "what[?]" and Sonya saw Riley and E.J. appear.  Barrett stated, "what the fuck are y'all doing here[?]"  Barrett then went into his bedroom, came back out with a gun, said

_____

[2] Although Ceonte lived with Barrett in the residence, Barrett testified that he did not give Ceonte a key because he was a thief, and that he did not allow Ceonte to have friends in the residence.

3

"what the fuck are y'all doing here[?]" and started shooting. E.J. shot back. Sonya further testified that when Ceonte, Riley, and E.J. arrived, Sonya did not see any of them with a weapon.

¶7 E.J. testified that he drove Riley and Ceonte to check on Ceonte's mother. At the residence, Ceonte went in first, Riley followed, and then E.J. When E.J. got upstairs, he saw Barrett pointing a gun at the three of them. Barrett said, "y'all get your asses out of here" while pointing the gun at them. About thirty seconds later, Barrett started shooting. E.J. testified that he pulled out a gun from his pocket and started shooting back because his life was in danger.

¶8 Barrett testified that he shot in self-defense. Barrett said that he heard footsteps coming up the stairs and grabbed the gun in his bedroom.[3] Barrett confronted E.J. at the door and said, "get the fuck out of here, why the fuck are you here." Barrett said that he pointed a gun at E.J., but lowered it after he saw Ceonte. According to Barrett, E.J. had a gun out and E.J. fired the first shot. Barrett testified that he fired back because E.J. was trying to kill him. Barrett further testified that he did not intend to shoot Riley:

> Trial counsel: Who were you trying to shoot?
>
> Barrett: I was trying to shoot [E.J.]
>
> Trial counsel: Were you trying to shoot Riley?
>
> Barrett: No.
>
> Trial counsel: Did you have a reason to shoot Riley?
>
> Barrett: No.

---

[3] Barrett testified that the gun in his bedroom was Sonya's gun.

¶9 At the conclusion of the trial, Barrett asked the trial court to instruct the jury on the castle doctrine, which the State opposed.[4] The court denied the request, but gave the standard self-defense instruction.

¶10 The jury convicted Barrett of second-degree reckless homicide with the use of a dangerous weapon, a lesser included offense, and possession of a firearm by a felon. Barrett was sentenced to twenty years of initial confinement followed by fifteen years of extended supervision consecutive to any other sentence.

*Postconviction Proceedings*

¶11 Barrett filed a postconviction motion arguing that: (1) the trial court erred when it did not instruct the jury on the castle doctrine; (2) trial counsel was ineffective; (3) the trial court erred in allowing evidence that Barrett was an abusive man; and (4) the trial court erred in denying Barrett's request for a mistrial based on testimony that Barrett had been in jail.

¶12 After briefing, the postconviction court denied the motion without a hearing. The postconviction court indicated that it stood by the trial court's decision denying the castle doctrine instruction and the trial court's rulings during trial. In regards to whether trial counsel was ineffective, the court found that Barrett insufficiently alleged prejudice.

---

[4] Prior to trial, Barrett filed a memorandum requesting the castle doctrine instruction. The parties agreed to wait until the conclusion of the testimony to determine whether the castle doctrine applied.

¶13    On appeal, Barrett renews his arguments. Additional relevant facts are referenced below.

## DISCUSSION

### I.    Castle Doctrine Instruction

¶14    Barrett first argues that the trial court erroneously exercised its discretion when it denied the defense's request for the castle doctrine instruction. We disagree.

¶15    WISCONSIN STAT. § 939.48 (2019-20)[5] addresses self defense and defense of others. Wisconsin's castle doctrine is codified in § 939.48(1m)(ar), which provides:

> If an actor intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) and either of the following applies:
>
> 1. The person against whom the force was used was in the process of unlawfully and forcibly entering the actor's dwelling … the actor was present in the dwelling … and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.
>
> 2. The person against whom the force was used was in the actor's dwelling … after unlawfully and forcibly entering it, the actor was present in the dwelling … and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the dwelling[.]

---

[5] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶16    However, as the State observes, Barrett was not entitled to *any* self-defense instruction in this case. WISCONSIN STAT. § 939.48(3) provides:

> *The privilege of self-defense extends* not only to the intentional infliction of harm upon a real or apparent wrongdoer, but also *to the unintended infliction of harm upon a 3rd person, except that if the unintended infliction of harm amounts to the crime of first-degree or 2nd-degree reckless homicide*, homicide by negligent handling of dangerous weapon, explosives or fire, first-degree or 2nd-degree reckless injury or injury by negligent handling of dangerous weapon, explosives or fire, the actor is liable for whichever one of those crimes is committed.

(Emphasis added.)

¶17    In this case, at trial, Barrett testified that he was defending himself from E.J. and did not intend to shoot Riley, a third-party. However, because Barrett was tried for first-degree reckless homicide and convicted of second-degree reckless homicide, under WIS. STAT. § 939.48(3), the privilege of self-defense did not extend to Barrett.[6] We realize that Barrett received a standard self-defense instruction, however, Barrett was not entitled to a self-defense instruction in any form, including the castle doctrine instruction.

## II.    Ineffective Assistance of Counsel

¶18    Barrett argues that trial counsel was ineffective because "he failed to continually object to the myriad of leading questions asked by [the] prosecutor of the State'[s] key witnesses."

---

[6] Barrett suggests that WIS. STAT. § 939.48(3) is inapplicable because Riley was not an innocent bystander, but an active participant in a group of aggressors. This, however, is contradicted by Barrett's own testimony at trial that he was not trying to shoot Riley and did not have any reason to shoot Riley. Further, consistent with Barrett's testimony, both Stephanie and Sonya testified that Riley did not make any threats or display a weapon.

¶19    To prevail on a claim of ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the court concludes that the defendant has not proven one prong of this test, it need not address the other. *Id.* at 697.

¶20    A circuit court is required to hold an evidentiary hearing on a motion only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a defendant's motion has alleged sufficient material facts entitling the defendant to relief is a question of law that we review *de novo*. *Id.*, ¶9. If the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*

¶21    As the postconviction court found, Barrett's postconviction motion was insufficiently pled. Barrett's motion only included a single, conclusory sentence regarding prejudice. Barrett's motion simply stated "[i]n combination with counsel's other errors as set forth below, these errors substantially prejudiced [the] defendant and changed the outcome of the trial."

¶22    In order to prove prejudice, Barrett was required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at

8

694. However, Barrett's postconviction motion offers no legal support or argument as to how or why he would have been acquitted if counsel had continually objected. For instance, Barrett did not suggest that if the State had used open-ended questions that the witnesses' testimony would have been any different. *See Allen*, 274 Wis. 2d 568, ¶23 (stating that a postconviction motion must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how"). Therefore, the postconviction court properly denied Barrett's motion without an evidentiary hearing.

### III. Barrett's Prior Conduct

¶23 Barrett argues that the trial court erred by allowing the admission of testimony that Barrett was "a bad, 'abusive' man."

¶24 The decision to admit or exclude evidence rests within the trial court's discretion. *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870. "An appellate court will sustain an evidentiary ruling if it finds that the [trial] court examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.

¶25 As a preliminary matter, we note that Barrett's argument section in his initial brief lacks record citations. From what we can discern, it appears that Barrett is arguing that the following testimony should not have been admitted:

> State: Do you ever become concerned this is going to become physical?
>
> Sonya: Yes.
>
> State: Why?
>
> Sonya: Because he is abusive.

….

> State: If your daughter said he had put his hands on your throat and taken you down to the ground, did it happen that night?
>
> Sonya: Not that night, but he did it in front of her before.
>
> Trial counsel: Objection.
>
> Court: Sustained.

After sustaining the objection, the court instructed the jury that:

> any testimony about any prior conduct by the defendant in connection with this is not relevant. The jury should disregard that testimony. I'll strike it from the record. It's improper for the jury to rely on any stricken testimony in your discussions or deliberations of this case. You will disregard it; do you understand that?

¶26    Subsequently, the following exchange took place:

> State: Describe what it means when the defendant is coming up on you, like he's going to put his hands on you. What is he doing?
>
> Sonya: Like, coming up on me, in my face, like he was going to, like he was going to choke me, he was going to do what he always do, put his hands on me.
>
> Trial Counsel: Judge, same objection.
>
> Court: Sustained. With the same instruction.

¶27    We disagree with Barrett that the trial court erroneously exercised its discretion in respect to the above testimony from Sonya. As Barrett acknowledges, the trial court sustained the defense's objections and specifically instructed the jury to disregard any testimony about Barrett's prior conduct.

10

"Jurors are presumed to have followed jury instructions." ***State v. LaCount***, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.[7]

### IV.     Trial Counsel's Request for a Mistrial

¶28     Finally, Barrett argues that the trial court erred when it denied the defense's request for a mistrial based on testimony that Barrett was in jail.

¶29     "A motion for mistrial is committed to the sound discretion of the [trial] court." ***State v. Ford***, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61. "The trial court must determine, in light of the whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial." ***State v. Bunch***, 191 Wis. 2d 501, 506, 529 N.W.2d 923 (Ct. App. 1995). We will reverse the denial of a motion for a mistrial "only on a clear showing of an erroneous use of discretion by the trial court." ***State v. Ross***, 2003 WI App 27, ¶47, 260 Wis. 2d 291, 659 N.W.2d 122.

¶30     In this case, during trial, the following exchange occurred regarding Barrett's relationship with Sonya:

> State:  There were times where they dated and they didn't?
>
> Stephanie:  He was in jail, and he just got out.

Outside the presence of the jury, trial counsel requested a mistrial based on Stephanie's reference to "jail."

---

[7] Barrett suggests that the cautionary instructions were insufficient. Barrett, however, does not develop an argument on this point. We will not address issues that are inadequately briefed. ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶31 The trial court found that the reference was not sufficient to warrant a mistrial. The court explained that "it was a minimal reference" and "was smoothed over pretty quickly." Additionally, the court stated that because Barrett was charged with felon in possession of a firearm, the jury already had knowledge that he was convicted of a felony and, thus, would infer that Barrett had spent time incarcerated. The court offered to give a curative or limiting instruction; however, the defense declined an instruction.

¶32 Here, the trial court examined the relevant facts, used a demonstrated rational process, and reached a reasonable conclusion. *See **Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). The jail testimony was only a single reference in a multiple day trial. Further, the court offered to provide a curative or limiting instruction, but the defense declined the offer. Thus, we conclude that the trial court did not erroneously exercise its discretion in denying the motion for a mistrial. *See **Ross***, 260 Wis. 2d 291, ¶47.

## CONCLUSION

¶33 In sum, we conclude that Barrett was not entitled to a self-defense instruction in any form, including the castle doctrine. We also conclude that Barrett has failed to sufficiently allege that trial counsel was ineffective, and that Barrett's postconviction motion was properly denied without a hearing. Finally, we conclude that the trial court did not err in regard to the testimony concerning

Barrett's prior conduct or the defense's request for a mistrial based on the jail reference.[8]  Therefore, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] We note that Barrett also makes a number of other conclusory, undeveloped complaints in passing throughout his brief, including that trial counsel should have requested a mistrial on all of the alleged errors—not just the jail reference; trial counsel's objection to an exchange about whether Barrett was allowed to go to Chicago was "belated"; and that Barrett's due process rights were violated.  We will not develop arguments for parties and, accordingly, decline to address these claims. *Pettit*, 171 Wis. 2d at 646.