# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1399-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF687

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

  PLAINTIFF-APPELLANT,

 V.

MORRIS V. SEATON,

  DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: JENNIFER R. DOROW, Judge. *Reversed and cause remanded for further proceedings*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GUNDRUM, P.J. The State appeals from an order of the circuit court, contending the court erred in denying its motion to admit other acts

evidence at trial.[1]  For the following reasons, we agree with the State, and we reverse and remand for further proceedings.

## *Background*

¶2      The State charged Morris V. Seaton with third-degree sexual assault of "Anna."[2]  According to the criminal complaint, in June 2019, seventeen-year-old Anna and her older sister invited nineteen-year-old Seaton and the sister's boyfriend[3] over to their apartment for an evening of drinking and camaraderie. Anna and Seaton had been friends for some time; Anna was a student at the high school Seaton had previously attended.  Inebriated, both Anna and her sister eventually went into their shared bedroom to sleep.

¶3      Some time later, Seaton and the sister's boyfriend went into the bedroom, with the sister's boyfriend joining the sister on her bed and Seaton going onto the bed Anna was on.  The sister and her boyfriend left the room and went into the mother's bedroom.  Seaton placed his hand on Anna's thigh, and she moved it away.  He subsequently took off Anna's clothes and placed his fingers inside of her vagina.  Positioned behind Anna, Seaton "pushed her up against the wall," and while she was "on her knees with her hands up against the wall," he put his penis inside her vagina.  Anna believes he did so without a condom on.  Due to

---

[1] The State filed an interlocutory appeal of the circuit court's order pursuant to WIS. STAT. § 974.05(1)(d)2. (2020-21).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] "Anna" is a pseudonym.

[3] The record does not specifically indicate that this other male was the sister's boyfriend but does indicate they had previously had a relationship of an intimate nature.  For simplicity, we will use the term "boyfriend."

the pain, Anna told Seaton to stop, but he did not. As Anna "began to sober up," she pushed Seaton off of her, put on some clothes, and went into the bathroom. When she eventually re-entered the bedroom, Seaton was lying on her bed "trying to get her in bed with him[,] but she told him not to touch her." Seaton eventually left the apartment.

¶4 Prior to trial, the State filed a motion in limine seeking to introduce at trial evidence of an alleged prior sexual assault by Seaton of "Jane,"[4] another seventeen-year-old student from the high school Seaton had previously attended. The State represented that in that incident, which occurred in September 2017 or 2018, Jane had consumed some alcohol and was "hanging out" with Seaton and others in her sister's front yard in Whitewater, Wisconsin, around 10:00 p.m. Jane and Seaton knew each other from high school, although he was one grade ahead of her and had already graduated.

¶5 Jane eventually left to look for her cousin, and Seaton offered to help. When they were a couple houses away, Seaton "suggested they go behind a residence." The two sat on the lawn and talked for some time before Seaton "pushed [Jane] back into the grass and held her hands above her head with one hand while he pushed down her pants with his other hand" and began having intercourse with her. She told him to stop, but he responded "that it was fine and to be quiet" and put his arm over her mouth. Jane believed Seaton did not use a condom.

---

[4] Another pseudonym.

¶6      In its motion, the State indicated it was offering this other acts evidence pursuant to WIS. STAT. § 904.04(2)(a)[5] for the purpose of providing context, bolstering Anna's credibility, and establishing "motive, identity, plan, opportunity, and modus operandi." At the hearing on the motion, the State added that it also was offering it to prove intent.

¶7      The circuit court considered the admissibility of the Whitewater evidence using the three-step analysis of ***State v. Sullivan***, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). As relevant here, that analysis provides that "other-acts evidence is admissible if (1) it is offered for a permissible purpose under [WIS. STAT.] § 904.04(2)(a), (2) it is relevant under [WIS. STAT.] § 904.01, and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under [WIS. STAT.] § 904.03." ***State v. Dorsey***, 2018 WI 10, ¶8, 379 Wis. 2d 386, 906 N.W.2d 158 (footnotes omitted).

¶8      Beginning with the first prong—permissible purpose—the circuit court noted similarities and differences between the incident with Jane and the incident with Anna and stated, "I honestly think you could analyze this both ways, depending on how a court would really want to look at that. I would note the law does not require them to be identical, just similar. And there are a fair amount of similarities here."

---

[5] WISCONSIN STAT. § 904.04(2)(a) provides:

> *General admissibility*. Except as provided in par. (b) 2., evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶9      For similarities, the circuit court pointed out that (1) the females were both seventeen, and Seaton was close in age, a "peer"; (2) Seaton knew each of the females from having attended the same high school as them; (3) both alleged victims had consumed alcohol, and Seaton appeared to have been aware of this; (4) each incident involved an allegation of "intercourse"; (5) during which "the victims indicate they told Mr. Seaton to stop and he did not."  As to differences, the court observed that Seaton and Anna appeared to have been friends, while Seaton and Jane appeared to have been more like acquaintances, and that the incident in the present case "occurred in a bedroom" in a residence to which Seaton had been invited, while the Whitewater incident occurred "[o]utside, on the grass."  The court also believed the incidents involved "a different type of force," and it mentioned that the incidents occurred "about a year apart."

¶10     The circuit court posited, "Is [the Whitewater incident] being offered for motive?  No, I don't see that here.  Is it being offered for opportunity?  Not really….  I don't see this as a crime of opportunity."  The court continued, "What about intent?  Well, in this case it would be intent to have, right?  Intentional sexual contact, I suppose, in theory.  And I'm not sure that's what the State has."  The court added, "And I don't see this as a modus operandi because of th[e] differences that I talked about earlier, one being inside, [and] another being outside," and in this case, Seaton was "invited into the home" as opposed to the Whitewater incident where he was "really kind of coming upon that person."  The court stated that it "do[es] not believe that the evidence of the [Whitewater incident] fits under … identity, plan or modus operandi," adding that

> [t]his would be a far different situation if the Whitewater incident was really an invitation to a party together, an invitation by the victim to hang out.

5

> It was different. This was him helping her out, at least as the allegation goes, to help find her [cousin], and then a forcible assault is alleged outside.

If the incident with Anna had been different "in terms of it being outside or being, you know, taken behind bushes or anything like that," the court expressed, "it would be so much more similar, and I could say would go to this modus … operandi. But that's not what we have here."

¶11 While the circuit court acknowledged that the Whitewater incident could bolster Anna's credibility, it concluded that bolstering credibility, by itself, was not a permissible purpose, stating: "[R]eally, [credibility is] only acceptable if there's another acceptable purpose" and "we know it can't just be offered for the purpose to bolster the credibility. There must be something else under the statute." The court determined that the Whitewater incident was "not being offered for a permissible purpose."

¶12 Looking at the second *Sullivan* prong, the circuit court considered whether the evidence of the Whitewater incident was relevant. The court stated, "Sure, it could be relevant on credibility, no doubt. It could bolster. But without being able to say it's being offered for a permissible purpose under step one of the *Sullivan* analysis, I have difficulty finding that it would be relevant then to those purposes." The court concluded,

> [W]hile there is the greater latitude [rule], and no doubt, that gives a court authority under the facts and circumstances as I've described, they are not similar enough to warrant admissibility. They are not being offered for a permissible purpose, and therefore, I'm gonna deny the State's motion to admit the other act.

¶13 The State filed an interlocutory appeal, and we then certified the case to our supreme court. The supreme court accepted the certification, ordered

briefing, and held oral argument but then remanded this matter to us after vacating the certification due to a three-three tie.[6]

## *Discussion*

¶14    We review a circuit court's decision to admit or not admit other acts evidence for an erroneous exercise of discretion.  ***Dorsey***, 379 Wis. 2d 386, ¶24. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." ***Id.*** (citation omitted).  Here, because the court based its ruling on its erroneous belief that the first ***Sullivan*** prong—whether the State offered the evidence for a permissible purpose—was not satisfied, we conclude the court erroneously exercised its discretion in denying the State's motion to admit the other acts evidence.  We further conclude that the other acts evidence satisfies the second and third prongs of the ***Sullivan*** analysis as well.

*First **Sullivan** Prong*

¶15    As our supreme court has stated, "Identifying a proper purpose for other-acts evidence," the first prong of the ***Sullivan*** analysis, "is not difficult and is largely meant to develop the framework for the relevancy examination," the second prong of the analysis.  ***State v. Hurley***, 2015 WI 35, ¶62, 361 Wis. 2d 529, 861 N.W.2d 174.  "The purposes for which other-acts evidence may be admitted are 'almost infinite' with the prohibition against drawing the propensity inference being the main limiting factor." ***State v. Marinez***, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399.  Furthermore, to satisfy the first ***Sullivan*** prong, the

---

[6] The Honorable Janet C. Protasiewicz recused herself from consideration of the appeal.

7

proponent of the other acts evidence need only "identif[y] one acceptable purpose for admission of the evidence." ***State v. Payano***, 2009 WI 86, ¶63, 320 Wis. 2d 348, 768 N.W.2d 832 (footnote omitted).

¶16 Additionally, the greater latitude rule, as codified and expanded by the legislature in 2014, provides that

> [i]n a criminal proceeding … alleging the commission of a serious sex offense, as defined in [WIS. STAT. §] 939.615(1)(b), or of domestic abuse, … evidence of *any similar acts* by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

WIS. STAT. § 904.04(2)(b)1. (emphasis added); *see* 2013 Wis. Act 362, §§ 21, 38. The codification expanded the application of the greater latitude rule to domestic abuse cases and various sexual offense cases, including the third-degree sexual assault case now before us. Prior to this amendment, the rule was primarily employed in cases involving the sexual assault of children. *See*, *e.g.*, ***State v. Davidson***, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606. As highlighted, § 904.04(2)(b)1. encourages the admission of "any similar acts" by the defendant. The rule adds a thumb on the scale of admissibility when considering each prong of the ***Sullivan*** analysis. *See **Dorsey***, 379 Wis. 2d 386, ¶33 ("Application of the greater latitude rule … is not limited to any one [***Sullivan***] prong.").

¶17 Here, the State offered the other acts evidence for the purposes of motive, identity, plan, opportunity, modus operandi, intent, context, and credibility. All of these are explicitly recognized as permissible purposes either by WIS. STAT. § 904.04(2)(a) or case law. *See* § 904.04(2)(a) (allowing "evidence of other crimes, wrongs, or acts" when offered for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident"); *Marinez*, 331 Wis. 2d 568, ¶27 (reiterating that "context, credibility, and providing a more complete background are permissible purposes" (citing *State v. Hunt*, 2003 WI 81, ¶58, 263 Wis. 2d 1, 666 N.W.2d 771)); *Hurley*, 361 Wis. 2d 529, ¶¶61-64 (stating that establishing a method of operation, i.e., modus operandi, is a permissible purpose).

¶18 Our supreme court's decision in *Dorsey* highlights the limited showing needed to satisfy the first *Sullivan* prong. In *Dorsey*, the State offered evidence of other acts by Dorsey to show his "intent and motive to cause bodily harm to" the victim of the offenses for which he was on trial. 379 Wis. 2d 386, ¶9. The court concluded that "[u]nder WIS. STAT. § 904.04(2)(a), 'motive' and 'intent' are listed as permissible purposes. *Thus*, the evidence was offered for a permissible purpose." *Dorsey*, 379 Wis. 2d 386, ¶42 (emphasis added). Similarly in the case now before us, the State offered the other acts evidence for multiple permissible purposes listed in § 904.04(2)(a) and/or recognized by our case law. "Thus," the other acts evidence in this case was offered for a permissible purpose.

¶19 While the circuit court acknowledged, in connection with the second *Sullivan* prong, that the other acts evidence would be relevant to credibility, it nonetheless denied the State's motion because it concluded the State failed to put forth a proper purpose. This conclusion was erroneous not only for the reasons indicated above, *see supra* ¶¶17-18, but also because the court erroneously believed credibility could not qualify as a permissible purpose on its own. This is directly at odds with our supreme court's recognition in *Marinez* that credibility *is* a permissible purpose under WIS. STAT. § 904.04(2)(a). *See Marinez*, 331 Wis. 2d 568, ¶27; *supra* ¶17.

¶20 Especially in light of the fact the greater latitude rule applies here, we easily conclude that the State offered the other acts evidence for multiple permissible purposes, including credibility, and thus met its burden with regard to the first *Sullivan* prong.

*Second **Sullivan** Prong*

¶21 As to the second prong of the *Sullivan* analysis—whether the other acts evidence is relevant—our supreme court has explained that such evidence is relevant under WIS. STAT. § 904.01 "if it: (1) 'relates to a fact or proposition that is of consequence to the determination of the action'; and (2) is probative because it 'has a tendency to make a consequential fact more probable or less probable than it would be without the evidence.'" *State v. Gutierrez*, 2020 WI 52, ¶32, 391 Wis. 2d 799, 943 N.W.2d 870 (citing *Sullivan*, 216 Wis. 2d at 785-86). The other acts evidence here is relevant.

¶22 Seaton asserts that his "defense [at trial] will be that Anna consented to the sexual intercourse." He insists that because this is his defense, our supreme court's decision in *State v. Alsteen*, 108 Wis. 2d 723, 324 N.W.2d 426 (1982), "bars the admission of Jane's testimony on the issue of Anna's consent." Seaton continues, "*Alsteen*'s conclusion that in a case involving a sexual assault by sexual intercourse, where the only issue is consent, an unrelated act of nonconsensual sexual intercourse with a different person is not relevant remains controlling law." He adds that the alleged assault of Jane "does not have a probative value of a fact of consequence given the facts of this case." Seaton's position does not account for significant developments in Wisconsin law since *Alsteen*.

¶23 En route to driving home a fifteen-year-old girl, Alsteen had sexual intercourse with her. *Id.* at 725. She reported being raped, and Alsteen was

10

charged with sexual assault. *Id.* at 725 & n.1. At trial, the girl testified to details of the assault. *Id.* at 725 n.1. The circuit court permitted the State to present the testimony of two witnesses as to other sexual wrongs perpetrated by Alsteen. *Id.* at 726. The first witness was a father who testified to having found Alsteen in bed and on top of the father's nude eleven-year-old daughter seven years earlier. *Id.* The second witness testified that three years before the incident for which Alsteen was on trial, she accepted an offer from Alsteen for a ride home from a party, and Alsteen stopped the car en route and had intercourse with her over her objections and resistance. *Id.* at 726-27. Testifying on his own behalf, Alsteen acknowledged he had intercourse with the fifteen-year-old girl but claimed she had consented. *Id.* at 725-26 & n.1. Alsteen was convicted.

¶24 On appeal, our supreme court concluded the circuit court erred in admitting the other acts evidence because it "was not relevant to any issue in the case." *Id.* at 730. Recognizing that "the only issue was whether [the fifteen-year-old girl] consented to the act," the court stated, "[e]vidence of Alsteen's prior acts has no probative value on the issue of [the girl's] consent. Consent is unique to the individual. 'The fact that one woman was raped … has no tendency to prove that another woman did not consent.'" *Id.* (citation omitted).

¶25 While *Alsteen* indicates that evidence of a prior sexual assault by a defendant of "one woman" is not relevant on the issue of whether "another woman" consented to sexual intercourse with the defendant, we see the present case as meaningfully different because *Alsteen* did not involve consideration of the greater latitude rule, which "allows for more liberal admission of other-acts evidence." *See Dorsey*, 379 Wis. 2d 386, ¶32. It is not surprising *Alsteen* did not involve the greater latitude rule, because at the time that case was decided, the greater latitude rule was almost exclusively applied in cases involving the sexual

assault of young children. But, with the amendment of WIS. STAT. § 904.04(2)(b)1. in 2014, the legislature expanded the rule to also apply to older-victim sexual assault cases as well as domestic abuse cases.[7] Further, not only does the expansion state it applies to foster the admission of "any similar acts" by the accused, the legislature additionally wrote that such evidence "is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act"—the circumstance at issue in the present case. *See id. Alsteen* turned on the fact the prior act victims were different than the fifteen-year-old girl in the case on trial, while, again, the subsequently codified and expanded greater latitude rule directs that admissibility of "any similar act" is "without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." *See* § 904.04(2)(b)1.

¶26 Much more recently, our state supreme court decided ***Dorsey***, in which the court considered whether testimony from Dorsey's former girlfriend as to physical violence he committed against her years earlier was properly admitted under WIS. STAT. § 904.04(2)(b)1., the newly codified and expanded greater latitude rule. ***Dorsey***, 379 Wis. 2d 386, ¶¶8, 16-17, 25. Interpreting and applying subd. (b)1., the court stated that "for the types of cases enumerated under … § 904.04(2)(b)1., circuit courts should admit evidence of other acts with greater

---

[7] Seaton also directs us to ***State v. Cofield***, 2000 WI App 196, 238 Wis. 2d 467, 618 N.W.2d 214, which relied in part upon ***State v. Alsteen***, 108 Wis. 2d 723, 324 N.W.2d 426 (1982). As with ***Alsteen***, ***Cofield*** is not controlling because in that case we again did not apply the greater latitude rule. We have no reason to believe either ***Alsteen*** or ***Cofield*** would have been decided as they were if the greater latitude had applied to older-victim sexual assault cases at the time of those decisions.

latitude under the *Sullivan* analysis to facilitate its use for a permissible purpose." *Dorsey*, 379 Wis. 2d 386, ¶33.

¶27　In considering whether the other acts evidence was relevant, i.e., related "to a fact or proposition of consequence" and had "probative value, that is, 'a tendency to make a consequential fact more or less probable than it would be without the evidence,'" the *Dorsey* court did so in relation to the assertion that the evidence of prior violence against a different victim bolstered the credibility of the victim in the case before it. *Id.*, ¶¶44, 50 (citation omitted).　The court stated that to the extent the prior victim's testimony bolstered the current victim's credibility as to her testimony that she was physically assaulted by Dorsey, "we have held that '[a] witness's credibility is always "consequential" within the meaning of WIS. STAT. § 904.01.'"　*Dorsey*, 379 Wis. 2d 386, ¶50 (alteration in original; quoting *Marinez*, 331 Wis. 2d 568, ¶34).　The court added,

> And we have held that credibility is particularly probative *in cases that come down to he-said-she-said*.　Moreover, the difficult proof issues in these kinds of cases "provide the rationale behind the greater latitude rule.… [I]t follows that the greater latitude rule allows for the more liberal admission of other-acts evidence that has a tendency to assist the jury in assessing [credibility]."

*Id.* (alterations in original; emphasis added; citations omitted).　The court held that the circuit court did not err in determining that the other acts evidence was relevant.

¶28　While *Dorsey* was a domestic abuse case, the court went out of its way to make clear that its interpretation of WIS. STAT. § 904.04(2)(b)1. "applies with equal force to the other circumstances listed in … § 904.04(2)(b)1.," which include the charge against Seaton. *Dorsey*, 379 Wis. 2d 386, ¶26 n.20.　Broken down, the *Dorsey* court held that bolstering a current alleged victim's credibility at

trial is a relevant use of other acts evidence in he-said-she-said type cases. The sexual assault case against Seaton, as in so many similar cases, boils down to he-said-she-said on the issue of whether his sexual intercourse with Anna was consensual.

¶29 The circuit court correctly recognized that the Whitewater evidence here "could be relevant on credibility, no doubt. It could bolster" Anna's credibility as to her version of events. While *Alsteen* appears to hold that such other acts evidence is not relevant and thus not admissible in such a circumstance, crucially, it was not considering the other acts evidence in light of the greater latitude rule—the *Alsteen* court decided the case before it without the rule's thumb on the scale of admissibility. Once our supreme court applied the weight of that thumb in relation to the second/relevance *Sullivan* prong in *Dorsey*, the court held that "[a] witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01," "credibility is particularly probative in cases that come down to he-said-she-said," and "the greater latitude rule allows for the more liberal admission of other-acts evidence that has a tendency to assist the jury in assessing [credibility]." *Dorsey*, 379 Wis. 2d 386, ¶50 (alteration in original).

¶30 Consistent with the plain holding on the matter in *Dorsey*, in the he-said-she-said circumstance of the case now before us, the other acts evidence is relevant for the purpose of assisting the jury in assessing the credibility of both Anna's and Seaton's accounts as to what happened—particularly whether Anna initially consented to sexual intercourse with Seaton, and, if she did consent, whether she subsequently withdrew that consent during the intercourse. As the

*Dorsey* court indicated, the greater latitude rule exists in substantial part because of "the difficult proof issues in [he-said-she-said] kinds of cases." *See id.*[8]

¶31    As to the relevance of the other acts evidence to another of the State's permissible purposes—modus operandi, or method of operation—we previously agreed with an Iowa Supreme Court decision in which that court "explained … that evidence of *modus operandi* may be introduced to rebut a defendant's claim of consent by showing that he 'has had a *nonconsenting* encounter with another person in this strikingly singular way.'" *See **State v. Ziebart***, 2003 WI App 258, ¶23, 268 Wis. 2d 468, 673 N.W.2d 369 (citing ***State v. Plaster***, 424 N.W.2d 226, 231 (Iowa 1988)).  We added in ***Ziebart***, "[w]here, as here, a defense of consent is inextricably connected to a defendant's conduct surrounding and including sexual contact, and where other-acts evidence is probative of a *modus operandi* rebutting that defense," a jury "may consider the evidence on the issue of whether an alleged victim consented to the defendant's conduct." ***Ziebart***, 268 Wis. 2d 468, ¶24.  That is the circumstance now before us; the other acts evidence is relevant to modus operandi related to whether Anna consented to sexual intercourse with Seaton and if so, whether she subsequently withdrew that consent.

---

[8] This is not the first time we have applied the codified and expanded greater latitude rule in the context of an older-victim sexual assault case.  In ***State v. Smogoleski***, No. 2019AP1780-CR, unpublished slip op. ¶17 (WI App. Nov. 18, 2020), we considered the admissibility of a defendant's prior sexual assault of a sixteen-year-old girl at a party at his trial for the sexual assault of a seventeen-year-old girl at a different party.  Because of the similar factual circumstances between the two assaults, we stated that the other acts evidence was "highly probative" and "highly relevant to this case, as it provides context, intent, and motive and specifically addresses the questions of consent and witness credibility." *Id.*, ¶23.  ***Smogoleski*** is persuasive for the present case.

¶32     The other acts evidence here is also relevant to Seaton's motive—particularly to obtain sexual gratification by continuing the intercourse with Anna despite her purported communication for him to stop. If Jane's testimony as to Seaton's purported acts in Whitewater—specifically that she told him to stop the sexual intercourse with her but he nonetheless continued—is believed by the jury, the jury also will be more inclined to believe Seaton was motivated during the encounter with Anna by a goal of sexual gratification to the point that this motive would, for him, trump Anna's mid-act withdrawal of consent. The other acts evidence "tend[s] to make the fact[] of … motive more probable because [it is] similar as to … motive, namely that, in both instances" it is implicitly alleged that Seaton's desire for sexual gratification led him to continue sexual intercourse with both Anna and Jane despite each telling him to stop. *See **Dorsey***, 379 Wis. 2d 386, ¶49.

¶33     This case presents the somewhat unique circumstance where the jury may not be unanimously convinced beyond a reasonable doubt that Seaton began intercourse with Anna without her consent, but yet it might be so convinced that she withdrew her consent during the intercourse but he did not stop. It appears her narrative of events may be that prompted by pain she was experiencing during the intercourse, she told Seaton to stop, but he did not comply. Seaton's defense may well end up morphing into an "it was a misunderstanding" defense—that his intercourse with Anna began consensually, and if Anna in fact attempted to communicate to him to stop, he did not receive that communication. Presentation of the other acts evidence would tend to negate such a defense, because with the prior act, Seaton is alleged to have also begun intercourse with Jane and not stopped when she told him to. The other acts evidence would tend to persuade a

jury that it is less likely Seaton misunderstood or did not hear Anna's withdrawal of consent and more likely he simply disregarded it.

¶34    As the circuit court correctly noted, the circumstances in this case and the prior act bore substantial similarities: (1) the alleged victims were both seventeen, and Seaton was close in age, a "peer"; (2) Seaton knew each from having attended the same high school as them; (3) both alleged victims had consumed alcohol, and Seaton appeared to have been aware of this; (4) each incident involved an allegation of "intercourse"; and (5) "the victims indicate they told Mr. Seaton to stop and he did not."[9]    Nevertheless, the court was not convinced the two alleged assaults were similar enough for admission of the other acts evidence.  But, the court made this determination because the alleged assault of Anna occurred in a bedroom while the alleged assault of Jane occurred late at night on someone's lawn, Anna was a "friend" of Seaton's from their mutual high school while Jane was only an acquaintance from that same school, and the court believed Seaton used more force with Jane than with Anna.  The court also referenced the number of months in between the two alleged assaults.  These differences are either insignificant or, in the case of the amount of force used, unclear.

¶35    It is alleged that in both circumstances, Seaton took advantage of a secluded area to assault the victim and exploited her trust stemming from familiarity from high school; the nuanced inside-versus-outside and friend-versus-acquaintance differences are insignificant.  And as to level of force used, the

---

[9] We note the additional similarity that both victims believe Seaton did not use a condom.

apparent circumstances in each case do not clearly indicate a significant difference. In each case, there appears to be a question as to whether the sexual intercourse was consensual or nonconsensual the entire time or whether it began consensually and then the alleged victim withdrew her consent during the intercourse, but Seaton did not stop. It is also alleged that in each case Seaton "pushed" the victim into position for intercourse with her hands restricted in some way. And, the fact Seaton's alleged assault of Jane occurred either nine months or a year and nine months before his alleged assault of Anna is inconsequential when compared to other cases that had substantially longer time periods between the act at issue and the prior act. *See, e.g.*, ***Hurley***, 361 Wis. 2d 529, ¶¶2, 81-82 (twenty-five years); ***State v. Kuntz***, 160 Wis. 2d 722, 747-48, 467 N.W.2d 531 (1991) (sixteen years); ***State v. Kimberly B.***, 2005 WI App 115, ¶41, 283 Wis. 2d 731, 699 N.W.2d 641 (several years). The other acts evidence related to Jane most certainly fits the bill of "any similar acts," as required under the greater latitude rule.[10]

*Third **Sullivan** Prong*

¶36 Because the circuit court determined in the first instance that there was no permissible purpose for the other acts evidence, it never considered the third ***Sullivan*** prong—whether Seaton satisfied his burden to show that the probative value of the Whitewater evidence is "substantially outweighed by the risk of unfair prejudice under [WIS. STAT.] § 904.03." *See **Dorsey***, 379 Wis. 2d 386, ¶8 (footnote omitted). "Unfair prejudice occurs when the evidence

---

[10] Because the State develops no arguments in its brief-in-chief specific to using the other acts evidence for the purpose of establishing a plan, opportunity, intent, identity, or context, we do not address those permissible purposes.

'influence[s] the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.'" *Gutierrez*, 391 Wis. 2d 799, ¶35 (alteration in original; citation omitted). For this final prong, "[t]he bias … is squarely on the side of admissibility. Close cases should be resolved in favor of admission." *Hurley*, 361 Wis. 2d 529, ¶90 (alteration in original; citation omitted).

¶37 The similarities between the alleged assault of Jane and the alleged assault of Anna make the other acts evidence highly probative. While the evidence is obviously prejudicial to Seaton, it is not unfairly so, and the prejudice does not substantially outweigh its probative value. The other acts evidence is of such a similar nature to the alleged assault of Anna that it is unlikely to arouse a sense of horror or appeal to juror sympathies any more than the evidence the jury will hear related to Anna. Particularly if requested by Seaton, we assume the circuit court will consider giving the jury a limiting instruction with regard to the other acts evidence. *See id.*, ¶89 ("In some cases, limiting instructions eliminate the potential for unfair prejudice."). The third *Sullivan* prong is also satisfied.

¶38 For the foregoing reasons, we conclude the circuit court erroneously exercised its discretion in denying the State's motion to admit the other acts evidence related to Jane, and we reverse and remand this matter for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded for further proceedings.

Recommended for publication in the official reports.